155 So.2d 509

**STATE of Alabama**

v.

**AAA MOTOR LINES, INC.**

**3 Div. 35.**

Supreme Court of Alabama.

July 11, 1963.

Richmond M. Flowers, Atty. Gen., and Wm. H. Burton, Asst. Atty. Gen., for appellant.

**406**

L. Lister Hill and Godbold, Hobbs & Copeland, Montgomery, for appellee.

GOODWYN, Justice.

The State Department of Revenue made a final assessment against AAA Motor Lines, Inc., of a motor vehicle license tax on "trucks and truck-tractors for hire," under the provisions of Act No. 672, appvd. Sept. 8, 1961, effective Oct. 1, 1961, Acts 1961, Vol. I, p. 921. AAA took an appeal from the assessment to the circuit court of Montgomery County, in equity, pursuant to § 140, Tit. 51, Code 1940. The trial court, after an oral hearing of the evidence, rendered a decree declaring the assessment to be "invalid, illegal and void" and setting it aside. The State prosecutes this appeal from that decree.

Subsection (b) of § 1 of Act No. 672 prescribes the license tax here involved, viz:

"(b) Trucks and Truck-Tractors For-Hire.—Motor trucks and truck-tractors with more than two axles when a single unit, and all tractor-semi-trailer or truck-trailer combinations which are used to transport goods, wares, merchandise, or commodities of any kind or nature for compensation of any kind, or operated under any rental, lease, or other agreement where compensation is charged for the use of such vehicle, except trucks used for the transportation of household goods, personal furniture, or other household effects, and except motor vehicles used in the transportation of commodities exempt under the Alabama Motor Carrier Act of 1939, as amended, either directly or indirectly, shall pay the following licenses:

| Gross Vehicle Weight in Pounds | Amount of License Tax |
|---|---|
| 0 to 8,000 | $ 15.00 |
| * * * * | * * |
| 42,001 or more | 450.00 |

"It is provided, however, that vehicles as described in this sub-section which operate exclusively within 15 miles of the corporate limits of the incorporated municipality in which they are customarily domiciled (but not in-

cluding vehicles operating beyond the borders of Alabama) are not considered to be for hire."

We are concerned with the meaning of the proviso "that vehicles * * * which operate exclusively within 15 miles of the corporate limits of the incorporated municipality in which they are customarily domiciled * * * are not considered to be for hire."

In summary, the facts are these: AAA owned a truck-tractor (a 1947 International), generally referred to as a "mule," which it operated exclusively within 15 miles of the corporate limits of Dothan, where it was then "customarily domiciled." AAA's principal place of business is located in Dothan, but it also maintains terminals at Montgomery, Birmingham, and Troy. AAA purchased the regular ("H-2") license tags for this truck-tractor in Houston County for the license tax year beginning October 1, 1961, and ending September 30, 1962, as prescribed by § 697, Tit. 51, Code 1940, and also paid in said County the ad valorem taxes on it for the preceding tax year (Code 1940, Tit. 51, § 704, as amended by Act No. 660, appvd. Sept. 6, 1961, Acts 1961, Vol. I, p. 822). After so using the "mule" in Dothan for about four months of the license tax year, AAA drove the "mule" to its terminal in Montgomery where it was used in the same manner as it was used in Dothan. In driving it to Montgomery, no load was carried. Its use and operation in Montgomery was exclusively within 15 miles of the City's corporate limits. After being so used in Montgomery for about four months, the "mule" broke down and was carried on a trailer to Dothan to be repaired in AAA's shop. After being repaired, it was driven to Birmingham, where it was similarly used in AAA's terminal during the remainder of the license tax year. We do not understand there to be any disagreement that the moving of the truck-tractor to Montgomery and Birmingham constituted changes of its "domicile." The controverted issue is whether the truck-tractor was "customarily domi-

ciled" in Montgomery and Birmingham, within the meaning of that term as it is used in the proviso.

The position taken by the State is that the proviso (being an exception to the license tax and in the nature of an exemption) should be strictly construed against the exception or exemption, and that, when so construed, it means the following: When a truck-tractor once acquires a "domicile," such "domicile" is the only place where it can be "customarily domiciled" during a license tax year, and if it is moved to another place within the State, and there acquires a new "domicile," it then becomes subject to the license tax prescribed by Act No. 672. In other words, the insistence seems to be that the phrase "customarily domiciled" means that the owner of a truck-tractor, in order to get the benefit of the exception or exemption, necessarily must first select a place as the "domicile" for the truck-tractor, which then becomes the place where it is "customarily domiciled"; and that a new "domicile" thereafter acquired during the license tax year cannot become the place where it is "customarily domiciled." In short, the insistence is that a truck-tractor cannot be "customarily domiciled" at more than one place during any one license tax year. The State places particular emphasis on the use of the word "the" preceding the phrase "incorporated municipality" as denoting a legislative purpose to limit the "domicile" of a truck-tractor to only one municipality during any one license tax year.

Our conclusion is that the trial court correctly held the assessment to be invalid.

■■ The proviso, here under review, is by no means so clear in its meaning as not to need interpreting. We proceed, then, to ascertain the legislative intent, which is the guiding star in construing a statute. Haralson v. State ex rel. King, 260 Ala. 473, 480, 71 So.2d 79, 43 A.L.R.2d 1343. In determining such intent, the all-prevailing rule is that "a statute is to be construed in

**408**

accordance with its real intended meaning, and not so strictly as to defeat the legislative purpose"; and the rule of strict construction against a tax exemption, relied on by the State, does not impinge upon this all-prevailing rule. State v. Taylor, 262 Ala. 639, 80 So.2d 618. One approach in determining the legislative purpose and intent is to examine the prior law, and related statutes, on the subject embraced in the statute being construed. City of Montgomery v. Montgomery City Lines, 254 Ala. 652, 665, 49 So.2d 199; Peters v. Tuell Dairy Co., 250 Ala. 600, 601, 35 So.2d 344; State ex rel. Fowler v. Stone, 237 Ala. 78, 83, 185 So. 404. As said in the Peters case: "It is a sound rule of statutory construction that a statute is to be taken in reference to its subject matter and the object to be accomplished by the act in its relation to other statutes. Abramson v. Hard, 229 Ala. 2, 155 So. 590."

Acts Nos. 672 and 673 (appvd. Sept. 8, 1961, Acts 1961, Vol. I, p. 923) were passed at the same time and are in reality companion statutes. Their purpose was to revise the mileage tax law then applicable to motor carriers (Act No. 664, § 2, appvd. July 5, 1940, Gen.Acts 1939, pp. 1050, 1051). This mileage tax act provided, in part, as follows:

> "[E]very motor carrier traversing the highways of the State * * * shall pay to the State of Alabama into the fund of the state department of Revenue as contribution to the maintenance, repair and policing of its public highways for each mile actually operated within the State on such public highways, whether such vehicle is loaded or empty, a mileage tax [so much per mile based on seating capacity] * * * on all passenger vehicles * * *; and a mileage tax of one-fourth (¼) cent per mile, per axle, on all vehicles transporting property for hire. * * * "

Act No. 673 amended Act No. 664 by deleting the mileage tax on vehicles transporting property for hire and leaving in force the mileage tax on passenger vehicles. Act No. 672, as a substitute for the mileage tax on vehicles transporting property, prescribes a straight per annum tax, graduated according to the gross vehicle weight in pounds. It is to be noted that Act No. 664 called for the mileage tax whether a vehicle was "loaded or empty"; also, that such tax was "as contribution to the maintenance, repair and policing" of the State's public highways. Act No. 672, in excepting vehicles operating "exclusively within 15 miles of the corporate limits of the incorporated municipality in which they are customarily domiciled," discloses an intention to exempt those vehicles from the annual license tax on the basis that they will not be used in general hauling of property for hire over the State's highways, but instead will be confined to limited areas within and adjacent to the incorporated municipalities where they are "customarily domiciled." In other words, it appears to be the basic legislative purpose not to require the license tax on a vehicle unless it is used for hauling property for hire outside such area. As against this, however, the State takes the position, as set out above, that the statute contains verbiage denoting an intent to circumscribe and limit any such broad exemption. Our real problem, then, is to determine, in the light of said basic legislative purpose, whether it was intended, as the State insists, not to authorize the exemption when a vehicle's "domicile" is changed during a license tax year.

There is no indication whatever that the truck-tractor was used for hauling property for hire at any time during the license tax year except within 15 miles of the corporate limits of Dothan, Montgomery and Birmingham. And while being so used, the truck-tractor was "domiciled" in said cities.

Although the term "domicile" is ordinarily used with respect to persons and not to property, it seems to us that the legislature, in using this term, contemplated that a motor vehicle can have its "domicile"

changed at the will of its owner, just as the owner can change his domicile at will.

■ The State's brief lays emphasis on the use of the phrase *"the* incorporated municipality" in Act No. 672 as "clearly denoting that only one municipality is contemplated by the exemption." We do not think this was the intended meaning. It seems to us, as argued by AAA, that "the use of these words merely indicates that the legislature understood the obvious: that a motor vehicle, like a person, would in the normal course of events have but one domicile, *at a time,* until its domicile was changed." See: Ex parte Weissinger, 247 Ala. 113, 117, 22 So.2d 510; Ex parte Bullen, 236 Ala. 56, 60, 181 So. 498; Lucky v. Roberts, 211 Ala. 578, 580, 100 So. 878. To follow the State's position the taxpayer, in effect, would be denied the privilege of changing the "domicile" of its motor vehicle during the license tax year. We do not think that was intended.

■ Another rule in construing statutes is that weight will be given to the practical effect a proposed construction will have. See: Mitchell v. McGuire, 244 Ala. 73, 76, 12 So.2d 180; Birmingham Paper Co. v. Curry, 238 Ala. 138, 140, 190 So. 86. "A statute, the meaning of which is doubtful, should be given rational, sensible and liberal construction in view of the relief to be awarded." Birmingham Paper Co. v. Curry, 238 Ala. 138, 140, 190 So. 86, 87, supra. "It is true that all laws should, and indeed must, be given a sensible construction, * * *." Ex parte Rowe, 4 Ala. App. 254, 261, 59 So. 69, 72.

AAA argues in brief that the consequences of the State's position run counter to the foregoing rules. We must perforce agree.

It seems to us that the construction placed on the proviso of Act No. 672 by the trial court, and here insisted on by AAA, is sensible, practical, and fair, and is the meaning intended by the legislature. We find no justifiable basis for saying that the legislature intended to restrict the use of a truck-tractor to a single "domicile" during any one license tax year.

The decree appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.