This appeal involves convictions based upon eight separate indictments, two of which were joint. All of the cases were consolidated for trial and appeal. Appellant Dorothy A. Dannelley was sentenced to a total of thirty-five years in the penitentiary and appellant John F. Dannelley was sentenced to a total of one hundred and fifteen years in the penitentiary. They each were separately arraigned in the presence of counsel, waived reading the indictments and entered pleas of not guilty and not guilty by reason of insanity. The cases involved the possession of marijuana and child molestation. They had their genesis with the execution of a search.
The affidavit leading to the issuance of the search warrant reads as follows:
 "DISTRICT COURT X X AFFIDAVIT 15TH JUDICIAL CIRCUIT X X IN SUPPORT OF MONTGOMERY COUNTY X X SEARCH WARRANT STATE OF ALABAMA X
 "Before me, the Honorable H.M. Kennedy Judge of the District Court, 15th Judicial Circuit, Montgomery County, State of Alabama, the undersigned being first duly sworn, deposes and says:
 "That he is a law enforcement officer with the State of Alabama, Alcoholic Beverage Control Board and has been so employed for the past nine years.
 "That he has reason to believe, probable cause to believe, and does believe Marijuana, a controlled substance is being kept, stored, concealed and used in violation of the Alabama Uniform Controlled Substances Act of 1971 at the residence of Johnny Frank Dannelly, alias Johnny Dannelley, 6311 Pinebrook Drive, Montgomery, Montgomery County, Alabama.
 "And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:
 "On November 27, 1979, I received information from a first time informant. Said informant stated that he had been present at 6311 Pinebrook Drive, Montgomery, Montgomery County, Alabama, within the recent past and while at this address said informant stated that he had observed Marijuana being used and sold by a white male known to the informant as Johnny Dannelly. *Page 558 
 "Said informant has demonstrated to me his ability to recognize Marijuana.
 "The informant was then, within the past 72 hours, given a sum of U.S. currency and was taken by Agent Kominitsky to the area of Johnny Dannelly's residence. Said informant was observed to enter 6311 Pinebrook Drive. Said informant then returned to Agent Kominitsky with a bag of Marijuana which he (informant) stated he had purchased from Johnny Dannelly. Said informant also stated that when he (said informant) left the aforementioned address that Johnny Dannelly had a quantity of this Marijuana remaining in his possession. Said informant was searched prior to and after purchasing the marijuana and at neither time did said informant have any money or drugs, other than the aforementioned items.
 "Based on the above information, I have probable cause to believe and do believe that Marijuana is presently located at 6311 Pinebrook Drive, Montgomery, Montgomery County, Alabama.
 /s/ Van Kominitsky /s/ H. Mark Kennedy
VAN KOMINITSKY DISTRICT COURT JUDGE AGENT II 15TH JUDICIAL CIRCUIT" ALABAMA ALCOHOLIC BEVERAGE
CONTROL BOARD
The search warrant is as follows:
"STATE OF ALABAMA
"COUNTY OF MONTGOMERY
 "Before me H.M. Kennedy District Judge (Name and Title of Magistrate) personally appeared ABC Board Enforcement Agent Van Kominitsky who being duly sworn, deposes and says that he has probable cause to believe and does believe that Marijuana, a controlled substance is being kept, stored, concealed and used at the residence of Johnny Frank Dannelley, alias Johnny Dannelley, 6311 Pinebrook Drive, Montgomery, Montgomery County, Alabama.
"Sworn to and subscribed before me this the 30th day of November 1979
/s/ H. Mark Kennedy (Magistrate) /s/ Van Kominitsky
SEARCH WARRANT
"The State of Alabama, County of MONTGOMERY
"To any Sheriff, Deputy and/or Municipal Police:
 "Proof by affidavit having been made this day before me, by
(See attached affidavit)
 "You are hereby commanded to make immediate search (daytime only) on the person and premises of Johnny Frank Dannelley alias Johnny Dannelley, 6311 Pinebrook Drive, Montgomery, Montgomery County, Alabama.
 "for the following property Marijuana "and if you find the same or any part thereof, to bring it forthwith before me, at my office at Montgomery
Alabama. "Dated the 30th day of November 1979.
/s/ H. Mark Kennedy (Magistrate)"
Appellants filed a pretrial motion to suppress and after a lengthy hearing the motion was denied. [See Appendix.]
Mr. Van Kominitsky testified at the suppression hearing that he was employed by *Page 559 
the Alabama Alcoholic Beverage Control Board, Enforcement Division, and had been so employed for approximately nine and a half years. He stated he was introduced to an informer about a week before he executed and signed an affidavit before Honorable H. Mark Kennedy, Judge of the District Court of Montgomery County, Alabama, who then issued a search warrant to search the residence of appellant Johnny Frank Dannelley at 6311 Pinebrook Drive in the City and County of Montgomery, Alabama, for marijuana. This was a first time informer and Kominitsky had never previously received information from this informer and did not know the reliability and credibility of the informer. He, therefore, set up a controlled buy with this informer to verify the information furnished him that marijuana was being used and sold at the Dannelley residence. To be certain that the informer knew marijuana when he saw it Kominitsky showed the informer a package of marijuana and the informer immediately recognized the substance.
Kominitsky patted down the clothes of the informer and searched the informer's car and did not find marijuana on the informer's person or in the car. He then gave the informer $35.00 in U.S. currency and followed the informer's car to the Dannelley residence. He saw the informer drive to the Dannelley residence and enter the side door. He drove slowly past the residence and returned to a position where he could observe the house. He remained parked for about ten minutes and saw a light come on in the back bedroom, which the informer had previously told him was the Dannelleys' bedroom. From this vantage point the officer observed a shadowy figure pass in front of the curtains on the window of the bedroom and appear to open a chest of drawers. After the lapse of a minute the lights went out and the officer saw the informer come out of the house, get in his car and drive away. The officer followed the informer's car to the prearranged location where the informer handed him a bag of marijuana and told him the bag was purchased from Johnny Dannelley.
Appellants called several witnesses, mostly family members, who testiged that on the night the controlled buy allegedly occurred Johnny F. Dannelley was not at home.
Having verified the informer's information as being true and correct in all respects the officer made the affidavit upon which the search warrant was issued. On December 1, 1979, at 8:00 a.m., Kominitsky, ABC Agents John Crawford, Larry Williams, and Montgomery County Deputy Sheriff Wayne Ward, executed the search warrant. A search of the house was conducted and a small amount of marijuana was found in a bag, two marijuana cigarettes, pipes containing marijuana residue, and drug paraphernalia.
During the course of the search the officers discovered a plastic file box in a closet in the master bedroom which contained numerous Polaroid pictures of nude children and adults engaged in various sexual activities. The pictures were dumped in a pile on the bed and the officers immediately recognized the minor children of appellants among the photographs on top of the pile. Agent Kominitsky was the evidence officer and Officers Ward and Crawford carried several of the photographs to him. Upon looking at them Kominitsky immediately called the office of the District Attorney and described the photographs and asked if he needed to obtain another warrant to seize the photographs. He was advised by an Assistant District Attorney that no additional warrant was necessary but that he should notify the Youth Aid Division of the Montgomery Police Department. Officers from this Division went to the Dannelley residence to investigate. Officer F.T. Brock confirmed that the photographs depicted various minors, including the Dannelley children, and adults nude and engaging in various sexual relations. The photographs were seized, and the Dannelleys were charged with contributing to the delinquency of a minor.
At the conclusion of the suppression hearing appellants filed motions to waive trial by jury and to exclude the audience. The *Page 560 
court examined Mr. and Mrs. Dannelley separately and apart to determine if they knowingly, understandingly and voluntarily waived their rights to a jury trial on the indictments charging child molestation. The appellants told the court that, due to the nature of the crimes and for the sake of their children, and the hurt and embarrassment the children would endure, they would prefer to be tried by the court alone. The court inquired of appellants' counsel if the jury trial waiver was with his consent and he answered in the affirmative. Counsel representing the State said that he had no objections to the motions. Thereupon the court granted the jury trial waivers.
On the motion to exclude the audience pursuant to Section12-21-202, 1975 Code of Alabama, the court interrogated both appellants and advised them that under the Constitutions of Alabama and the United States they were entitled to an open and public trial in all cases pending against them. They each responded that they understood their constitutional rights to an open and public trial and voluntarily waived such right. The Dannelleys told the court they did not want their children to testify at an open and public trial, they wanted to spare them further embarrassment and hurt. The court then stated: "All right. From the colloquy between the court and the Dannelleys, I am satisfied that the Dannelleys knowingly understand that they have a right to an open and public trial under the laws of this State and under the Constitution of this State and under the Constitution of the United States and that they knowingly and intelligently and voluntarily wish to waive that right to a public and open trial." The court further ordered that trials would be open to the public until the Dannelley children were called to testify and the courtroom would be closed to the public during their testimony.
The trial got under way with the State calling Kominitsky and Crawford as witnesses for the State. It was stipulated that the testimony of Deputy Sheriff Ward given at the suppression hearing would be admitted into evidence.
Kominitsky's testimony was essentially the same as he gave at the suppression hearing. He identified the affidavit and search warrant as State's Exhibit 1 and these documents were introduced into evidence without objection. He testified that the Dannelleys were arrested for possession of illegal drugs. At the suppression hearing this officer testified that when the Dannelleys were arrested for possession of marijuana they were given the Miranda rights and warnings.
On cross-examination he testified that he did not learn from the informant, other officers, or from any other source that there might be photographs in that house; that his first knowledge that photographs were in the house was when some of them were brought to him for inspection.
ABC Agent Johnny Crawford testified that he was a narcotics officer and had served in such capacity for three years. He was present at the Dannelley home on the morning of December 1, 1979, when the search warrant was executed and was present when a plastic box was found by Deputy Ward. He identified the box as State's Exhibit 6. Ward gave the box to Crawford who carried it to Mr. Dannelley and asked him if he had a key to the box and Mr. Dannelley told him that he had not been in the box in a couple of years. Crawford examined the box and observed an arrow pointing toward the side. He pushed it to the side and the box opened. He gave the box to Ward who dumped the contents on the bed at which time Crawford saw numerous photographs. He picked up 12 or 14 of them and took them to the kitchen where his supervisor, Agent Kominitsky, was sitting with Mr. and Mrs. Dannelley. After observing the photographs Agent Kominitsky made a telephone call and a short time later two officers from the Youth Aid Division came to the house and took charge of the box and the photographs. The photographs were offered and admitted into evidence.
On cross-examination this witness stated that prior to the time he assisted in executing the search warrant he had no knowledge *Page 561 
or information about photographs depicting nude adults and children in various positions of sexual activities. He said one photograph depicted "a little boy holding a man's privates in his hand," and another photograph revealed "the Dannelley kids in bed together."
Investigator F.T. Brock of the Youth Aid Division of the Montgomery Police Department testified that he had been with the Division for eight years; that on December 1, 1979, he went to 6311 Pinebrook Drive and met with ABC Agents Kominitsky and Crawford. Present at the time was Deputy Sheriff Ward. He stated he was shown numerous photographs of pornography which included juveniles in sexual activities with adults. He was shown a box containing a number of photographs. He identified State's Exhibit 2 as three females engaging in oral sex and stated the exhibit came from the bedroom of Johnny and Dorothy Dannelley; that he took custody of the box and its contents and that he and Officer Tucker kept custody of the box and the photographs until they surrendered them to the court. When the evidence was turned over to the court it was in the same condition as it was when seized at the Dannelley home. State's Exhibit 2 was offered and received into evidence over the objection of appellants that it was the result of an illegal search and seizure.
The State offered into evidence the testimony of Deputy Sheriff Wayne Ward given during the suppression hearing and it was introduced without objection.
This concluded the testimony of the officers and the court closed the courtroom to all persons except the court officials and the attorney appointed to represent a 15 year old minor. Also remaining in the courtroom was the Guardian Ad Litem appointed to represent the two minor children of appellants. One of the children was a boy and the other a girl. For the purpose of this opinion we think it best to refer to all the minor witnesses by number and not state their names.
Witness number one was a fifteen year old girl and a niece of appellant Dorothy Dannelley. She testified that, in late 1979, the Dannelleys lived at 17 Maxwell Avenue in Montgomery. She was shown State's Exhibit 2 and identified the photograph as one taken of her, Mrs. Dannelley and her minor daughter. They were all nude and in bed together and Mrs. Dannelley had her head between the legs of the witness. The minor daughter of appellant, Mrs. Dannelley, is depicted with her head between the legs of her mother. She stated the photograph was taken by appellant Johnny Dannelley. She further testified that Mrs. Dannelley had her mouth open and penetrated her private parts with her tongue. She stated this had happened more than one time. She said that Johnny Dannelley had sexual intercourse with her more than one time but she could not recall the number of times that his private parts had penetrated her private parts. She stated that appellant Johnny Dannelley had taken pictures of her in the nude when she was six or seven years of age but she could not recall the number of times.
This witness was shown another photograph removed from the box which depicted her legs in the air and a white substance between her legs. She explained the substance was foam and was to keep her from getting pregnant.
Witness number two was the twelve year old daughter of appellants and was a Special Education student. She explained that she was a special student because, "I am slow in learning. I can't learn as fast as other people." She lived with her parents on Pinebrook Drive and formerly lived at 17 Maxwell Avenue. She was shown State's Exhibit 2 and stated the persons in the photograph besides herself were her mother and her cousin, witness number one; that the picture was taken by her daddy while they were living on Maxwell Avenue. She further testified that her father had put his private parts into her private parts. She explained that the white foam was used "to keep us from getting pregnant." She recalled the occasion when her mother put her head between her legs and put her tongue inside her private parts, and that her father *Page 562 
had done the same thing to her. She further stated that her father put the foam inside her before he put his private parts inside her. State's Exhibit 6, depicting oral sex, was offered and introduced into evidence.
This concluded the testimony of the juveniles and the State rested its cases charging appellants with the crime of child molestation. Thereupon counsel for appellants moved for a directed verdict contending the State had failed to prove the requisite intent to commit the crimes charged and that the State only proved that it was just a posed photograph and nothing more. The motion was properly overruled.
Officer F.T. Brock of the Youth Aid Division was recalled as a witness for the defense. He testified that prior to the time he arrived at the residence of appellants he had been informed by Agent Kominitsky that photographs depicting sexual misconduct had been discovered. He stated that prior to the time he received the information from Agent Kominitsky he had no knowledge of photographs showing illicit conduct had been or was taking place at 6311 Pinebrook Drive. He further stated that he seized the photographs and these photographs led to the indictments charging appellants with the crimes of child molestation for which appellants were then on trial. At the conclusion of this witness's testimony the defense rested.
From the record:
 "The Court: All right, Gentlemen. The court is prepared to rule.
"Will the Defendants rise?
 "Case number 79-1130a and 79-1130b-G charges the offense of child molestation of _____ (witness number one). Upon consideration of the evidence it is the verdict of this court that the defendants are hereby found guilty of that charge. On the finding of guilty, judgment of guilty is hereby entered against the Defendants.
 "In case number 79-1131a and 6-G, charging the Defendants with the offense of child molestation with the juvenile _____ (witness number two), upon consideration of the evidence it is the verdict of this court that the defendants are hereby found guilty of that offense. And on the court's verdict of guilty, judgment of guilty is hereby entered in accordance therewith.
 "Sentencing in this case, because of the nature of it, will be three weeks from Friday."
The delay in postponing sentencing appellants was for the purpose of obtaining a presentence report.
Appellant's counsel gave oral notice of appeal and the court fixed the amount of appeal bond in each case at ten thousand dollars.
As to all the remaining indictments the State by and through the District Attorney, appellants personally and individually, and the attorney of record for appellants, entered into written stipulations of facts. These stipulations are:
 "IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR MONTGOMERY COUNTY, ALABAMA
"STATE OF ALABAMA, )
Plaintiff, )
 VS. ) CASE NUMBER 80-30-G and JOHNNY F. DANNELLEY, and ) 80-26-G DOROTHY A. DANNELLEY, )
Defendants. _________________________ ) *Page 563 
"STIPULATION OF FACTS
 "Comes now the State of Alabama, by and through James H. Evans as District Attorney, and the Defendants, Johnny Dannelley and Dorothy Dannelley, personally, and by and through Walter B. Chandler, III, attorney for Defendants, and shows unto this HONORABLE COURT the following:
 "1. That the Defendants were indicted on the above charges in the January, 1980, Grand Jury.
 "2. That the Defendants were previously tried on related charges (79-1130 and 1131) and found guilty of two cases each of child molestation.
 "3. That in the two prior trials, evidence concerning photographs depicting the Defendants and certain juveniles was admitted.
 "4. That motions to suppress the evidence were filed by the Defendants and overruled as to the photographs prior to their introduction.
 "5. That certain testimony regarding the search and seizure was admitted at the trial and the preceding motion to suppress hearing.
 "6. That at the prior trial, a stipulation was entered that all of the testimony would be the same as at the motion to suppress hearing and that that testimony would be made a part of the record of the prior trial.
 "7. That if a trial was held in the above styled cases, all of the testimony would be the same.
 "8. That if a trial were held in the above styled cases, the testimony of _____ would be as follows:
"(a) That her date of birth is December 14, 1964.
 "(b) That in early 1979, at 17 Maxwell Avenue, Montgomery, Alabama, Johnny Dannelley had sexual intercourse with her.
 "(c) That in early 1979, at the Days Inn Motel, Montgomery, Alabama, Dorothy Dannelley had oral intercourse with her.
 "9. That at various times in Montgomery County, Alabama, Johnny Dannelley took nude photographs of her and that Dorothy Dannelley was either present when the photographs were taken or had knowledge of the photographs. *Page 564 
"DONE this 14th day of February, 1980.
 /s/ Dorothy A. Dannelley
DOROTHY A. DANNELLEY
 /s/ Johnny F. Dannelley
JOHNNY F. DANNELLEY
 /s/ Walter B. Chandler, III
WALTER B. CHANDLER, III ATTORNEY FOR DEFENDANTS
 /s/ Jimmy B. Pool
JIMMY B. POOL CHIEF DEPUTY DISTRICT ATTORNEY FIFTEENTH JUDICIAL CIRCUIT"
"JUDGMENT OF THE COURT
"WEDNESDAY, FEBRUARY 20, 1980
"COURT MET PURSUANT TO ADJOURNMENT
 "PRESENT THE HONORABLE WILLIAM R. GORDON, JUDGE PRESIDING
"THE STATE
CC 80-26 OFFENSE — CHILD MOLESTATION
DOROTHY ANN DANNELLEY
"THE STATE
CC 80-30 OFFENSE — CHILD MOLESTATION
JOHNNY FRANK DANNELLEY
 "This day came the State by its District Attorney and came also the defendants in their own proper person and by attorney, and the defendants having heretofore been duly arraigned upon the indictments for their pleas thereto pleaded not guilty, and not guilty by reason of insanity. And the defendants in open court file a Motion for Waiver of Trial by Jury, and the court ascertaining that the defendants knowingly signed such waiver, grants said Motion for Waiver of Trial by Jury. And the defendants in open court file a stipulation of facts and announce themselves ready for trial.
 "And after hearing the evidence and the court having considered the stipulation of facts, the court is of the opinion and it is considered and adjudged by the court, that the defendants are guilty as charged in the indictments and the cases were continued for sentencing." *Page 565 
"STATE OF ALABAMA, )
 Plaintiff, ) CASE NUMBER 80-31-G, VS. ) 80-32-G, 80-27-G, JOHNNY F. DANNELLEY, and ) and DOROTHY A. DANNELLEY, 80-28-G )
Defendants. )
"STIPULATION OF FACTS
 "Comes now the State of Alabama, by and through James H. Evans as District Attorney, and the Defendants, Johnny Dannelley and Dorothy Dannelley, personally, and by and through Walter B. Chandler, III, attorney for Defendants, and shows unto this HONORABLE COURT the following:
 "1. That the Defendants were indicted on the above charges in the January, 1980, Grand Jury.
 "2. That the Defendants were previously tried on related charges (79-1130 and 1131) and found guilty of two cases each of child molestation.
 "3. That in the two prior trials, evidence concerning photographs depicting the Defendants and certain juveniles was admitted.
 "4. That on February 22, 1980, a STIPULATION OF FACTS
was entered into jointly by the State of Alabama and the Defendants. That as a result, the Court found the defendants guilty on a charge of child molestation. (Case Numbers 80-30-G and 80-26-G)
 "5. That motions to suppress the evidence were filed by the Defendants and overruled as to the photographs prior to their introduction.
 "6. That certain testimony regarding the search and seizure was admitted at the trial and the preceding motion to suppress hearing.
 "7. That at the prior trial, a stipulation was entered that all of the testimony would be the same as at the motion to suppress hearing and that that testimony would be made a part of the record of the prior trial.
 "8. That if trials were held in the above-styled cases, all of the testimony would be the same.
 "9. That if trials were held in the above styled cases, the testimony of witnesses would be as follows:
 "(a) That both Johnny F. Dannelley and Dorothy A. Dannelley were present when the photographs described in these indictments were taken. *Page 566 
 "(b) That both Johnny F. Dannelley and Dorothy A. Dannelley participated in the taking of the photographs described in the indictment.
 "(c) That the photographs described in the indictments were taken in Montgomery County, Alabama, since May of 1978.
 "(d) That the juveniles that are depicted in the photographs were under the age of 17 when the photographs were taken and that the defendants knew that the juveniles were under the age of 17 when the photographs were taken.
"DONE this 31st day of March, 1980.
 /s/ Dorothy A. Dannelley
Dorothy A. Dannelley
 /s/ Johnny F. Dannelley
Johnny F. Dannelley
 /s/ Walter B. Chandler, III
Walter B. Chandler, III Attorney for Defendants
 /s/ Jimmy B. Pool
Jimmy B. Pool Chief Deputy District Attorney Fifteenth Judicial Circuit"
 "PRESENT THE HONORABLE WILLIAM R. GORDON, JUDGE PRESIDING
"THE STATE
# CC 80-27 and CC 80-28 OFFENSE — VIOLATION s13-7-237
DOROTHY ANN DANNELLEY
"THE STATE
# CC 80-31 and CC 80-32
JOHNNY FRANK DANNELLEY
 "This day came the State by its District Attorney and came also the defendants in their own proper person and by attorney, and the defendants having heretofore been duly arraigned upon the indictments for their pleas thereto pleaded not guilty, and not guilty by reason of insanity. And the defendants having heretofore filed a Motion for Waiver of Trial by Jury, and the court ascertaining that the defendants knowingly signed such waiver, grants said Motion for Waiver of Trial by Jury, and the defendants now in open court announce themselves ready for trial. *Page 567 
"And the court having considered the stipulation of facts entered by the parties and counsel, and the court having examined all the photographs, the subject of the indictments in these cases, the court is of the opinion and it is considered and adjudged by the court, that the defendants are guilty as charged in the indictments and the cases were continued for sentencing."
The threshold issue presented on this appeal is the sufficiency of the affidavit leading to the issuance of the search warrant. The informer was a first time informer and had, of course, never given a tip to law enforcement officers before. Agent Kominitsky, the affiant, who personally appeared before the magistrate could not swear to the reliability nor to the credibility of the informant. That is the reason he set up a controlled buy using the informant. The affiant verified the reliability and credibility of the informer in the instant case.
This case is controlled by the pronouncements in Clenney v.State, 281 Ala. 9, 198 So.2d 293. In Clenney the informer's story was tested and found to be accurate and reliable. The question was posed in Clenney: "Must he be tested more than once before he can be relied on?" The Clenney court answered the question by saying:
 "* * * We do not think, however, that such is the rule. The caller in the instant case was tested in the instant case. The accuracy of his information was tested in every particular, save one, before the affidavit was made. The affidavit so recites. * * *"
All persons of common sense know there must be a first time informer before one can inform a second time or any number of successive times. We do not think the affidavit was insufficient on its face to support a finding of probable cause nor do we think the search warrant was defective based upon the affidavit.
In Thornton v. State, Ala.Cr.App., 390 So.2d 1093, this court held that the burden was on the accused to show why disclosure of the informant was necessary to show his innocence, and that where informant merely supplied information to law enforcement officer to establish probable cause for search of defendant's residence for drugs, and prosecution was for possession and not for sale, the trial court properly refused to require disclosure of identity of informant. This is precisely what happened in the instant case. At the conclusion of the child molestation cases, and related cases, appellant Johnny F. Dannelley pleaded guilty to possession of marijuana for personal use only and was sentenced to six months in the county jail.
Clenney relied on Jones v. United States, 362 U.S. 257,80 S.Ct. 725, 4 L.Ed.2d 697, and Draper v. United States,358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. The Supreme Court of the United States reaffirmed Jones in the case of United States v. Harris,403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723.
We turn now to a consideration of the crimes charged against appellants involving contributing to the delinquency of a minor and child molestation. These charges are predicated upon the seizure of photographs depicting minors and adults engaged in various sexual activities. In the instant case the officers executed a valid search warrant for marijuana and in the course of the search they found a plastic file box which was an ideal place where marijuana could have been hidden. Upon opening this box the officers unexpectedly discovered obvious evidence of crimes against children in the form of photographs. Before taking further action the officers called the Office of the District Attorney, described the photographs, and asked if they needed another warrant to seize the evidence and were advised that no additional warrant was necessary. The photographs were then seized and indictments followed.
Seizable items which inadvertently come into view of the officer lawfully *Page 568 
searching in connection with another crime, or who otherwise has a right to be where he is, may be retained and used in prosecution of the crime to which they relate if the officer is already in the constitutionally protected area. Sheppard v.State, 49 Ala. App. 674, 275 So.2d 353; Lucy v. State, 46 Ala. App. 484, 243 So.2d 756; Harris v. United States, 390 U.S. 234,88 S.Ct. 992, 19 L.Ed.2d 1067; Ker v. California, 374 U.S. 23,83 S.Ct. 1623, 10 L.Ed.2d 726.
The officers were fully justified in seizing the photographs as evidence of criminal activity involving separate and distinct crimes. These photographs depicting such crimes were properly admitted into evidence.
Appellants contend their convictions for the production of child pornograhy should be reversed for failure of the State to prove that the child pornography they produced was intended for sale. Stated another way, they assert that Section 13-7-237, Code 1975, applies only to the commercial production of child pornography and that people like them are free to photograph their debaucheries with impunity so long as it is not done for profit. Such a claim is contrary to the express terms, clear meaning, and manifest purpose of Section 13-7-237, Code 1975. Such a construction would do violence to every known rule of statutory construction in ascertaining the intent of the Legislature in enacting laws for the protection of society as a whole and certain societal interests in particular.
The Supreme Court of Alabama has repeatedly held that ascertaining and giving effect to the legislative intent as expressed in a statute is the "underlying consideration,"Employees' Retirement System of Alabama v. Head, Ala.,369 So.2d 1227; "the fundamental rule," Darks Dairy v. Alabama DairyCommission, Ala., 367 So.2d 1378; "the paramount purpose," Boswell v. South Central Bell Tel. Co., 293 Ala. 189,301 So.2d 65; and, "the guiding star," State v. AAMotor Lines, 275 Ala. 405, 155 So.2d 509, of statutory construction. The court made clear in Hamilton v. AutaugaCounty, 289 Ala. 419, 268 So.2d 30, that the legislative intent is "the all important or controlling factor," because under our system of government "the legislative intent constitutes the law."
Moreover, "(W)e can only learn what the legislature intended by what it has said," Ex parte Wilson, 269 Ala. 263, 112 So.2d 443; "We must find that intent only from the words in which it is expressed, applied to the facts existing at the time," Mitchellv. Mobile County, 294 Ala. 130, 313 So.2d 172; "We must determine the intent of the Legislature `by what it has said' and by that which it has `expressed in the statute,'" Hamilton v. AutaugaCounty, supra. What the Legislature has said, in Section 13-7-237, is:
 "Any person who knowingly films, prints, records, photographs or otherwise produces any obscene matter displaying or depicting in any way a person under the age of 17 years engaged in or involved in any way in any obscene act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, nudity or other sexual conduct shall be guilty of a felony and shall be punished by imprisonment in the penitentiary for life or not less than 10 years, and a fine of not more than $20,000.00." (Emphasis added.)
The Legislature said that "any person" who films, prints, records, photographs or produces child pornography is guilty of the crime, not just persons who do it for commercial purposes. Where the statutory language is clear and unambiguous, as it is here, there is no room for judicial construction. Town of Loxleyv. Rosinton Water, Sewer and Fire Protection Authority, Ala.,376 So.2d 705; City of Montgomery v. Brendle Fire Equipment, 291 Ala. 216, 279 So.2d 480.
Confronted with the fact that the language of Section 13-7-213, Code 1975, is plain and unambiguous, appellants attempt to find some ambiguity in the title of the statute, but their attempt is in vain. The title of the statute, which is Act No. 592, Regular Session, Acts of 1978, page 705, reads as follows: *Page 569 
 "To provide that any person who produces, displays, disseminates, or possesses with intent to disseminate
obscene matter displaying or depicting children under the age of seventeen years engaged in lewd sexual activity or any parent or guardian who knowingly permits their child to be depicted therein shall be guilty of a felony and punished as provided herein, to provide a method of proof that such child is under the age of seventeen, to provide that possession of six or more copies of the same obscene material is prima facie evidence of intent to disseminate the same and to provide for the forfeiture and condemnation of certain property used in or related to the defined crimes, and to provide definitions for its provisions." (Emphasis added.)
The title clearly and unequivocally states that any person who produces child pornography (Section 13-7-237), or displays or disseminates it (Section 13-7-231), or possesses it with intent to disseminate it (Section 13-7-232) violates the act. The phrase "possesses with intent to disseminate," which appears in the title, was lifted body and soul from Section 13-7-232. Appellants' argument that the words, "with intent to disseminate," modify any word other than "possesses" is without foundation and clearly wrong. There is no ambiguity in the title of the act.
Appellants are seeking to have this court alter Section 13-7-237, Code 1975, by adding between the words "who" and "knowingly" the words "for commercial purposes," words omitted by the Legislature. Such an alteration by this court, or any court, would violate the well established rule that while legislative language may be explained it cannot be detracted from or added to. State ex rel. Graddick v. Jebsen S. (U.K.) Ltd., Ala.,377 So.2d 940. The Supreme Court held in the Town of Loxley case, supra, "It is clearly not this court's function to usurp the role of the legislature and . . . amend statutes under the guise of construction." Ala., 376 So.2d 705.
Appellants also argue that the fact that the Legislature referred to the commercial dissemination of child pornography in other parts of the statute is evidence that it may have meant to do so in Section 13-7-237 as well, notwithstanding that it failed to. Such speculative argument must be rejected for two reasons. First, as the Supreme Court held in Alabama Industrial Bank v.State ex rel. Avinger, 286 Ala. 59, 237 So.2d 108:
 "Courts can only learn what the Legislature intended by what it has said, and have no right to stray into mazes of conjecture or search for imaginary purpose, in construing a statute." (citations omitted)
The second reason that appellants' speculative argument, which would have this court stray into mazes of conjecture, must be rejected is that the argument is profoundly unsound. The fact that the Legislature incorporated references to commercial purposes in other parts of the statute does not prove that it intended such a reference in Section 13-7-237, but just the opposite. Express references to commercial purpose elsewhere establish that the Legislature knew how to so limit or restrict the provisions of the statute if that was the intent. The deliberate use of the phrase "commercial production" in Section 13-7-238 clearly shows the Legislature intended something entirely different in Section 13-7-237 where it used broader language unlimited by any reference to commercial purpose. If the Legislature had intended that Section 13-7-237 be limited to commercial production, it would have so provided as it did in Section 13-7-238.
In Alabama State Board of Health ex rel. Baxley v. ChambersCounty, Ala., 335 So.2d 653, the Supreme Court held:
 "The purpose of statutory construction is to ascertain, not only from the language used by the legislature, but also from the reason and necessity for the act, the evil sought to be remedied, and the object and purpose sought to be obtained."
Appellants would have this court treat their child pornography convictions as though they are just a few more obscenity cases. To do so would ignore the necessity *Page 570 
that gave rise to the Alabama Child Pornography Act, ignore the evils sought to be remedied by the act, and ignore the object and purpose that the Legislature sought to obtain in enacting this legislation.
The necessity giving rise to the Alabama Child Pornography Act is that child pornography is different from obscenity in general. That is why the Legislature enacted separate legislation to deal with child pornography. Child pornography is different from general obscenity both in the degree of depravity involved and in the nature and extent of the harm involved. As for depravity, whatever may be said, and has been said, about what consenting adults do with and to each other, nothing so debases civilized society as the defilement of children for purposes of producing photographs like those involved in these cases. To state it simply, there are no further depths to which appellants could have lowered themselves.
As for the harm involved, what the United States Senate Judiciary Committee said in reporting out a bill which became the Federal Child Pornography legislation is on point:
 "Such encounters cannot help but have a deep psychological humiliating impact on those youngsters and jeopardize the possibility of healthy, affectionate relationships in the future. Indeed such children often grow up in an adult life of drugs and prostitution. Even more tragic, however, is the fact that many adults who were molested as children tend to become child molesters themselves, thus continuing the vicious cycle. S.Rep. No. 95-438, 95th Cong., 1st Sess. 9 (1977)."
Whatever the effects of obscene materials on those who view them, as the Senate Judiciary Committee concluded, "the use of children in the production of such materials is a form of child abuse." Id. at 15.
The evil that the Legislature sought to remedy with Section 13-7-237 was not the effect of child pornography on those who viewed it — that evil was treated by the provisions outlawing the dissemination and sale of child pornography. What the Legislature sought to remedy with Section 13-7-237 is another evil, the evil that is involved in the very production of child pornography — the sexual abuse of innocent and helpless children in front of a camera.
Whether the producer of child pornography is motivated by a desire to satisfy his prurient interest or for pecuniary gain, the harm to the children he victimizes is the same. Manifestly, that is why the Legislature in Section 13-7-237 deliberately prohibited the noncommercial production of child pornography as well as the commercial production of it.
It has been our unpleasant duty to view the contents of the plastic box in which the officer, while searching for marijuana, inadvertently discovered the photographs made the basis of appellants' convictions in these cases. These photographs reveal nude children and adults (appellants) engaging in various sexual activities. Many of the photographs show the private parts of female children in "spread eagle" positions; appellants performing sexual relations; minors performing oral sex with other minors and adults, and generally other acts that are difficult to put in words. These photographs are shocking in the extreme and are calculated to send tremors through the body of the boldest man "who ever scuttled ship or cut a throat." They are dehumanizing, demeaning, vulgar, and sadistic. Only persons devoid of moral values, even demented, would have subjected their children to such revolting experiences. The penalties meted out to these appellants seem mild in the light of these photographs and what they depict.
Appellants contend the Alabama Child Pornography Act is unconstitutional because the title indicates that the act proscribes the production of child pornography only if it is done with the intent to disseminate, while Section 13-7-237 proscribes all production. We reject this contention. Section 45 of the Constitution of 1901 requires that the title of an act gives sufficient notice of its contents. The title to the act does not indicate that production of *Page 571 
child pornography is illegal only if it is done with intent to disseminate. Section 45 of the Constitution does not require that the title of an act be an index or catalog of every provision nor of every effect of the act. Shelby County Commission v. Smith, Ala., 372 So.2d 1092; Lane v. Gurely Oil Company, Ala.,341 So.2d 712. Section 45 is to be liberally interpreted, and when the subject of an act is fairly expressed in its title (here the subject of the act is child pornography) then all matters reasonably connected with that subject may be incorporated in the act. Associated Industries of Alabama v. Britton, Ala.,371 So.2d 904; Salmon v. Birmingham Parking Authority, 294 Ala. 226,314 So.2d 687.
Finally, appellants insist their convictions should be reversed because the Alabama Child Pornography Act does not provide a pre-trial hearing on the question of whether the materials involved in a prosecution are obscene. The short answer to this claim of error is that appellants did not request such a hearing in the trial court. It is raised for the first time on appeal, and under the settled law of this state we will not pass on this issue. We note here that appellants elected a non-jury trial and had a pre-trial request for a hearing been made the only effect would have been to require the trial court to divide the cases into multiple parts. See Brown v. Robinson, Ala., 354 So.2d 272;Howard v. Pike, 290 Ala. 213, 275 So.2d 645; Smith v. State,280 Ala. 241, 192 So.2d 443.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellants and have found none. The judgments of conviction in all cases are affirmed.
AFFIRMED.
All the Judges concur.
 APPENDIX
"IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA
"STATE OF ALABAMA, ) )
Plaintiff, ) )
VS. ) CASE NOS. CC-79-1130 and ) CC-79-1131 JOHNNY F. DANNELLEY and ) DOROTHY A. DANNELLEY, ) )
Defendants. )
"OPINION
"The defendants are indicted for the offense of felony possession of marijuana (Ala. Code, § 20-2-1 et seq.) and child molestation(Ala. Code, § 13-1-113).
"The defendants filed a motion to suppress and amended motion to suppress (hereinafter `the motion') `any and all evidence or items of evidence seized as a result of the execution of a search warrant at the residence of the defendants on December 1, 1979.'
"A hearing on the motion was held on the 14th day of January, 1980, at which time witnesses testified for the State and the defendants. The defendants did not testify. In addition, the Court conducted an in camera examination of the informant in chambers on January 15, 1980. Present at the in camera hearing was Honorable Jimmy B. Pool, Assistant District Attorney for Montgomery County, Alabama, and the official court reporter. Pursuant to orders of the Court, the transcript of the in camera
hearing is to be transcribed and sealed pending transmission to the appropriate appellate court for review in the event of an appeal.
"This case is submitted on the question of (1) whether there was probable cause for the issuance of a warrant for the search of the defendants' residence for marijuana; (2) whether certain photographs seized in the search of the defendants' residence falls within the permissible scope of a `plain view seizure';[1]
and (3) whether the defendants *Page 572 
are entitled to disclosure of the name of the informant.
"The facts, as summarized, are that on November 30, 1979, Van Kominitsky, Chief of the Enforcement Division of the Alabama Alcoholic Beverage Control Board, as affiant, presented an affidavit to Honorable Mark Kennedy, a judge of the District Court of Montgomery County, Alabama, requesting a search warrant to search the residence of defendants at 6311 Pinebrook Drive, Montgomery County, Alabama, for marijuana. The factual basis of the affidavit was information detailing a confidential informant's `controlled buy' of marijuana from defendant Johnny Dannelley, together with facts of the affiant's participation in the controlled buy.
"A daytime search warrant was issued on November 30, 1979, to search `the person and premises of Johnny Frank Dannelley, alias Johnny Dannelley, 6311 Pinebrook Drive, Montgomery, Montgomery County, Alabama, for the following property marijuana . . .' On December 1, 1979 at 8:00 a.m., agents of the ABC Board and the Montgomery County Sheriff's Office executed the warrant at the defendants' residence.[2]
"Agent Kominitsky found a quantity of marijuana (.2 grams) in a Sucrets box which was in a larger box in a chest of drawers in the defendants' master bedroom. The defendants were then arrested for felony possession of marijuana and given their rights.
"During the further course of the search for other marijuana, Deputy Ward found in the master bedroom closet a plastic box of the variety used to store business records. Ward opened the box, and, although not containing any controlled substances, the box did contain two hundred twelve (212) Polaroid photographs, a detailed description of which is not necessary for the purposes of this order inasmuch as some of the pictures involve juveniles and they can be readily examined by any reviewing court.[3]
"Deputy Ward testified that he recognized the defendants and the defendants' children and that the photographs were evidence of criminal activity.[4] Kominitsky was the evidence *Page 573 
officer, and had the defendants in custody in the kitchen of the residence. He testified that Crawford brought him fifteen (15) of the photographs for examination. At this point, Kominitsky attempted to reach Mr. Pool to inquire if an additional warrant was required to seize the pictures. Kominitsky could not locate Mr. Pool but did locate Mr. John Bell, an assistant district attorney of Montgomery County, who informed him that the photographs could be seized without an additional warrant.
"Officers of the Montgomery Police Department, Youth Aid Division, were then called to the residence. Officer Brock came to the residence and testified that by comparing the photographs of the defendants' children to the children depicted in photographs on the defendants' dresser, that he identified the children, and that the photographs were evidence of criminal activity. After reviewing the photographs, he charged the defendants with the offense of contributing to the delinquency of a minor.
"Officer Brock took custody of the plastic box and pictures (SX-2) and made the return on the search warrant of sixty-four (64) magazines and periodicals and two hundred twelve (212) photographs which he denominated as `home-made adult and child pornography'.
"I.
"DISCLOSURE OF THE IDENTITY OF THE INFORMANT
"The defendants subpoenaed Deborah Gordon to the suppression hearing. Objections to all questions, except had the witness been to the defendants' residence the week prior to the search and whether the witness disliked the defendants, were sustained by the court.
"The defendants contend that the identity of the informant is critical to the defense of the charge, in essence asserting that the informant had the motive to plant the marijuana in the defendants' residence.[5] However, at this stage of the proceedings, the defendants have neither adduced evidence that the informant had the opportunity to plant the marijuana nor has any evidence of entrapment been suggested. In Kilgore v. State,50 Ala. App. 501, 280 So.2d 206 (Cr.App. 1973), the Court said at page 503 of 50 Ala. App., [at page 208 of 280 So.2d.,] as follows:
"`The primary purpose for the disclosure of the informer's name or identity is to prevent *Page 574 
a miscarriage of justice in cases where an accused might have been entrapped into committing the offense for which he is prosecuted. The fundamental requirements of fairness compels disclosure in such cases where the informer plays a major and active part in bringing about the sale of narcotics and continues and active participant therein.'
"It should be noted that Kilgore was a conviction of the appellant for sale of narcotics and not possession of controlled substances. See also Hatton v. State, 359 So.2d 822 (Cr.App. 1977).
"There is no hard and fast rule in this state regarding the disclosure of the informer's identity at the suppression hearing. However, at the trial on the merits, clear standards are applicable. McCray v. Illinois, 386 U.S. 300 [87 S.Ct. 1056,18 L.Ed.2d 62] (1967); Roviaro v. U.S., 353 U.S. [53] [77 S.Ct. 623,1 L.Ed.2d 639] (1957); McElroy v. State, 360 So.2d 1060 (Cr.App. 1978); Davenport v. State, 50 Ala. App. 321, 278 So.2d 769
(Cr.App. 1973).
"In State v. Barrett, [132 Vt. 369] 320 A.2d 621 (1974), the court spoke to an issue substantially similar to the issue in the case sub judice. Barrett is a `controlled buy case' and involved the conviction of the appellant for possession of a regulated drug. The Supreme Court of Vermont held that where the informant was not an eye witness to the possession of drugs at the time of the search because he was not present, the court was not required to disclose the name of the informant.
"However, out of an abundance of caution, the court elected the permissible alternative to either disclosure or non-disclosure, i.e., an in camera hearing such as conducted by the court in the case sub judice.
"Upon consideration of all the evidence, and in further consideration of the stage of the proceedings, the court is of the opinion that the informant is not critical or necessary to the defendants' case on the merits, and that the identity of the informant should not be disclosed at this time.
"II.
"PROBABLE CAUSE FOR ISSUANCE OF A SEARCH WARRANT
"To the extent desired by defendants' counsel, cross-examination of the affiant (Kominitsky) directed to the truth of the matter stated was allowed.[6]
"The defendants' witnesses testified that Deborah Gordon was the only non-family member who came to the residence in the evening the week of the search and that Johnny Dannelley was not at home when Ms. Gordon came to the residence. The witnesses, other than Troy Garner, further testified that Ms. Gordon never left the house and came back in during the visit.
"Upon consideration of the testimony, the court finds that there was probable cause for the issuance of the search warrant. The affidavit is not defective because the reliability of the `first time informant' is not facially established. The factual allegations of the controlled buy itself established reliability — indeed the search warrant could have been issued without the inclusion of the information about the first time informant. It is important to note in the case sub judice that the affiant had direct knowledge of the facts which furnished probable cause.
"III.
"SEIZURE OF THE PHOTOGRAPHS
"Having determined that there was probable cause for the issuance of the warrant to search the residence and the person of Johnny Dannelley, the court must now direct itself to the validity of the seizure of the two hundred twelve (212) photographs.
"Defendants' counsel attacks the seizure of the photographs by primarily arguing that they do not fall within the `plain view seizure doctrine'. The defendants contend *Page 575 
that plain view is not an exception to the warrant requirement; and they would have the authorities comply with four (4) requirements prior to seizure, as follows:
1. A valid prior intrusion.
2. Discovery inadvertent.
3. The criminal nature of the articles must be readily apparent or they must have a nexus with the articles for which the search warrant was granted.
4. Exigent circumstances.
"In Herrin v. State, 349 So.2d 103, 108 (Cr.App. 1977), the court articulated the three (3) prerequisites for a plain view seizure — the requirement of exigent circumstances was not among them. Moreover, if during the course of a lawful search there is found evidence of another offense not related to the crime for which the warrant was issued, it may be lawfully seized. Sheppard v.State, 49 Ala. App. 674, 275 So.2d 353 (Cr.App. 1973).
"The critical question in the case sub judice is was the criminal nature of the pictures readily apparent. The Herrin court held, citing Shipman v. State, 291 Ala. 484, 282 So.2d 700 (Ala. 1973) that it is not necessary that the recognition of the object as evidence be made beyond a reasonable doubt but only that the recognition satisfy a probable cause requirement.
"The Supreme Court in Shipman at page 488 of 291 Ala. [at page 703 of 282 So.2d] said, as follows:
"`For an item in plain view to be validly seized, the officer must possess some judgment at the time that the object to be seized is contraband and that judgment must be grounded upon probable cause.'
"Both Herrin and Shipman were cases dealing with the possession of drugs, i.e., contraband per se.
"The defendants argue that the pictures in the case sub judice
are not contraband and that they are not immediately recognizable as evidence of wrongdoing. The defendants assert the pictures are mere evidence and have no reasonable nexus with the object for which the search warrant was granted. Moreover, counsel contends that first amendment protection attends the photographs and other items and books seized by relying on Stanley v. Georgia,394 U.S. 557 [89 S.Ct. 1243, 22 L.Ed.2d 542] (1969) (mere private possession of obscene materials cannot be made a violation of state law).
"Mr. Justice Stewart's concurring opinion in Stanley provides a starting point for determining whether the criminal nature of the photographs was readily apparent. In Stanley, state and federal officers, acting pursuant to a valid search warrant to search for books, et cetera, of an illegal wagering business, discovered three (3) reels of eight millimeter film. Using a projector and screen found in an upstairs living room, they viewed the film. A state officer concluded that the films were obscene and seized them. At page 571 [89 S.Ct. at 1251], Mr. Justice Stewart said, as follows:
"`This is not a case where agents in the course of a lawful search came upon contraband, criminal activity, or criminal evidence in plain view. For the record makes clear that thecontents of the film could not be determined by mere inspection.'
(Emphasis supplied.)
"Thus, the officers are not restricted to an instanter recognition of an object as evidence of crime or criminal activity.
"The precise issue was addressed in the fairly recent case ofAnderson v. State, 555 P.2d 251 (Alaska 1976) on facts somewhat similar to those in the case sub judice. In Anderson where the officer scrutinized the slides[7] by holding each one up to the light and it was only then that the subject matter of the slides could be discerned, the court held that there was a search and not a plain view seizure.[8] *Page 576 
"In Nicholas v. Texas, 502 S.W.2d 169 (Tex.Cr.App. 1973), the Texas court likewise could not sustain the seizure of photograph negatives on the plain view theory where the officers were required to hold them up to the light to discern whether they depicted an illegal act. The court said at page 172, as follows:
"`In the instant case, the officers had, prior to examining the negatives, neither knowledge nor mere suspicion of an offense related to the film.' (Emphasis supplied.)
"Neither Anderson nor Nicholas is controlling here. At most, there may have been mere inspection of the photographs. There was not scrutinization or examination. Ward testified that looking at the photographs on the bed he recognized the defendants and the children and he recognized the pictures as evidence of an illegal (sex) act. The court finds that the incriminating nature of the photographs would be readily apparent to a reasonable man, and that the incriminating nature of the photographs was readily apparent to Deputy Ward. See United States v. Piatt, 576 F.2d 659
(5th Cir. 1978). Further, the court finds that Deputy Ward had an initial reasonable suspicion that the photographs were evidence of crime. See 2 La Fave, Search and Seizure, § 4.11, page 174;United States v. Woods, 560 F.2d 660 (5th Cir. 1977).
"Finally, applying the standard in Shipman, the court finds that Ward had probable cause to seizure the photographs.
"The defendants assert that the criminal nature of the photographs was not immediately apparent to Ward because they were put back into the box and Officer Brock of Youth Aid took `custody' of them after comparing the photographs to a framed picture of the children. In short, the defendants assert that Ward did not seize the photographs.
"`[A] seizure contemplates a forcible dispossession of the owner . . .' Weeks v. United States, 232 U.S. 383 [34 S.Ct. 341,58 L.Ed. 652] (1914); or as said in Monroe v. Pape, 221 F. Supp. 635,642 (N.D.In.Ed. 1963) `[A] "seizure" implies the taking possession by lawful authority of a person, thing or fact located in the performance of a search.' A consideration of the facts brings this court to the conclusion that Ward had seized the photographs. Ward had taken possession of the photographs for it can hardly be said or argued that the defendants had access to them prior to the time Brock took final custody. Brock did inventory the photographs and make a return of them, however, the return merely being a ministerial act the court finds that this does not invalidate the seizure. Satterwhite, supra. SeeAla. Code, § 15-5-7.
"The defendants argue that it was unreasonable to open the box in search of marijuana. The search warrant authorizes a search of the premises for marijuana. In view of the nature of the item for which the search was being conducted, and the location of the box, the court finds that the opening of the box was not outside the scope of the warrant. Moreover, Johnny Dannelley consented to the search when, after being informed of his rights, he voluntarily gave the key to the box to Agent Crawford.[9]
"IV.
"SEIZURE OF THE BOOKS AND DEVICES
"The books and devices are evidence of the crime charged, and, therefore, were properly seized.
"DONE this the 22nd day of January, 1980.
 /s/ William R. Gordon
WILLIAM R. GORDON Circuit Judge"
[1] Powers v. State, 49 Ala. App. 690, 275 So.2d 369 (Cr.App. 1973) (A mere observation of that which is in full view is not a search).
[2] The participants in the execution of the warrant were Deputy Wayne Ward, and ABC Board Agents Kominitsky, Crawford and Williams.
[3] Agent Kominitsky testified that Ward said the box was locked and inquired if it should be broken into. Kominitsky said he asked the defendant Johnny Dannelley for a key to the box and that the key was given, by Dannelley, to Agent Crawford. Crawford could not open the box with the key, but he finally opened the box by fiddling with the lock (apparently with some other object; Crawford did not testify) and got it open. Deputy Ward testified that he only thought the box was locked, but that it was not, and that he opened the box.
[4] Testimony of Mr. N.W. Ward. Direct examination by Mr. Pool:
Q. And you were looking for what when you went into the box?
A. Some more pills or marijuana or whatever.
Q. And you dumped the contents out on the bed?
A. Yes, sir.
 Q. Tell us what you saw when you looked at the contents of that box?
 A. Just numerous pictures of people in different states of nudity and engaged in sexual acts.
 Q. Could you tell the identity of any of the people from looking at them on the bed there?
A. Yes, sir.
 Q. Tell us the identity of the people that you saw while you were looking at them on the bed?
 A. I could see Mr. and Mrs. Dannelley and one of the kids. And other small children in the thing that I don't know.
 Q. Okay. I will ask you whether it appeared to you, when you first looked at those pictures, that they were evidence of another crime that had been committed?
A. Yes, sir.
Q. Some sex crime?
A. Yes, sir.
 Q. I believe that later at someone's request, some Youth Aid authorities arrived. Is that correct?
A. Yes, sir.
 Q. And together with — you helped them gather up the pictures at that time?
A. Yes, sir.
Cross-Examination by Mr. Chandler:
 Q. All right, sir. You found, I think you have described it as a box; a plastic file box?
A. Yes, sir.
 Q. That was a small suit case-type affair that is used for storing files?
A. Yes, sir.
Q. And it was locked? Or apparently locked?
A. I thought it was locked.
Q. And it was in the walk-in closet?
A. Yes, sir.
 Q. And after gaining entry into the little suitcase, you dumped the contents out on the bed?
A. Yes, sir.
 Q. All right. At that point in time did you see any marijuana?
A. No sir.
Q. Did you see anything which looked like marijuana?
A. No, sir.
 Q. Did you, at first glance at the photographs, I think you said, that were on the bed in an array, did you see any marijuana?
A. No, sir.
 Q. All right, sir. Did you at that time pick the photographs up?
A. At a point in time, I did.
 Q. All right, sir. Did you pick them up and start looking at them.
 A. I could see a bunch of them without having to pick them up, Mr. Chandler.
 Q. All right, sir. Did you see people in varying states of nudity?
A. Yes, sir.
Q. Without picking them up?
A. Yes, sir.
 Q. All right, sir. Did you see what purported to be, or what you believed to be at that time either Johnny or Dorothy Dannelley? A. Yes, sir.
Q. All right. Without picking them up?
A. Yes, sir.
 Q. All right. Mr. Pool asked you if you believed that what you saw there, those photographs, were evidence of another crime. Didn't he ask you that?
A. Yes, sir.
 Q. All right. Did you believe they were? A. Yes, sir. After I looked at them.
Q. Without picking them up? A. Some of them, yes, sir.
 Q. Okay. At that point in time, did you seize them? Did you pick them up?
A. Yes, sir. I picked them up.
[5] The witness testified that she had no feelings one way or the other for the defendants except that she did not like the way the defendant Johnny Dannelley did some things. To the contrary, Wayne Dannelley, the brother of the defendant and a former boyfriend of the witness, testified that on several occasions the witness had expressed her dislike for Johnny Dannelley.
[6] Procedure in this area is unclear. Prior to Franks v. Delaware,438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978), Alabama allowed cross-examination of the affiant directed to the truth of the matters contained in the affidavit. McConnell v. State,48 Ala. App. 523, 266 So.2d 328 (Cr.App. 1972). However, seeSatterwhite v. State, 364 So.2d 345, 354 (Cr.App. 1977), rev'd on other grounds, 364 So.2d 359 (Ala. 1978).
[7] Footnote No. 4 to the opinion clarifies that the slides "were unlike ordinary slides in that they presented negative images more difficult to discern."
[8] A fact present in Anderson which is not even suggested in the case sub judice is that prior to the search for marijuana the authorities had become aware of Anderson's sexual attraction for young boys. The inclusion of this matter in the reported decision suggests or infers that there may have been concern about the marijuana warrant being a subterfuge to search for evidence of abhorrent sexual activity.
[9] If the officers had been searching for stolen television sets opening the box would have been outside the scope of the warrant. *Page 577