314 So.2d 687

**Marion H. SALMON et al.**

v.

**The BIRMINGHAM PARKING AUTHORI-TY, a public corporation under the laws of Alabama.**

**SC 1123.**

Supreme Court of Alabama.

May 22, 1975.

Sam W. Pipes, Mobile, Stanford J. Skinner, Birmingham, Wesley Pipes, Mobile, for appellants.

Macbeth Wagnon, Jr., John P. Adams, John G. Harrell, John S. Foster, Birmingham, for appellee.

MADDOX, Justice.

The basic question presented is the constitutionality of an Act authorizing a Birmingham Parking Authority to issue bonds to build off-street parking facilities. The

Act involved is Act No. 2079, p. 3335, Acts of Alabama, 1971, carried in Vol. 14B, Appendix, Code of Alabama 1940 (Recomp. 1958), as Subdivision 22, §§ 1601(230)–1601(255).

The litigation arose out of the proposed construction of a multi-level parking deck by the Birmingham Parking Authority in the City of Birmingham, the sale of bonds by the Authority to pay construction costs of the facility, and a contract between the Authority and the City wherein the City agreed to make certain payments to the Authority and the Authority agreed to construct the facility and thereafter pay to the City certain surplus revenues from the facility.

The Authority filed this action on November 14, 1974, under the so-called bond validation statute. Act No. 859, Acts of Alabama, 1953, as amended by Act No. 973, Acts of Alabama, 1971, carried as Title 37, Secs. 359(8)–359(15), Code of Alabama, 1940 (Recomp.1958). At the time this suit was filed there was a pending action which had been filed by appellants, Marion H. Salmon and Salmon & Company, Inc., against the Authority and the City contesting the validity of the proposed project and the bond issue.

The defendants in this validation suit were listed as "Taxpayers and Citizens of the City of Birmingham," as provided for in Title 37, Sec. 359(9). Service of process on the "defendants" was by publication in the *Birmingham Post-Herald* pursuant to the procedure set out in the bond validation statute.

The trial court entered an order on November 14, 1974, setting the bond validation suit for hearing on December 12, 1974. Before the date set for hearing, appellants, Marion H. Salmon and Salmon & Company, Inc. filed motions to dismiss. These motions were denied. Appellant, Hendon and Company, Inc. also filed a motion to dismiss the bond validation suit. Ultimately, the court denied Hendon's motion to dismiss also.

Prior to the hearing on the merits of the bond validation suit, the City of Birmingham asked leave to intervene and the court permitted the intervention. Earl C. Morgan, as District Attorney for the Tenth Judicial Circuit was served as required by Title 37, Sec. 359(10). He filed an answer on behalf of "taxpayers and citizens."

After trial, the court found the issues in favor of the Authority and validated the bond issue.

Appellants argue that Act No. 2079 is unconstitutional because: (1) it is a local act which was not advertised according to Section 106 of the Constitution; (2) the Act contains a double classification since the title makes it applicable to cities with populations of 300,000 or more, and Section⁰ 8 makes it applicable only to cities having an elected city council; (3) Section 22 of the Act denies taxpayers and citizens their right to due process of law because the provisions relative to notice are insufficient; and (4) the Act violates Section 45 in that it contains more than one subject. We discuss each point.

### Act No. 2079 is a local Act.

Clearly, Act No. 2079 is a so-called "general law with local application," but of similar Acts this Court has time and again said that:

" * * * [W]here there is a substantial difference in population, and the classification is made in good faith, reasonably related to the purpose to be effected and to the difference in population which forms the basis thereof, and not merely arbitrary, it is a general law, although at the time it may be applicable to only one political subdivision of the state; but that if the classification bears no reasonable relation to the difference in population, upon which it rests, in view of the purpose to be effected by such legislation, and clearly shows it was merely fixed arbitrarily, guised as a general law, and, in fact, is a local law, it is

then in plain violation of the Constitution and cannot be upheld." *Reynolds v. Collier*, 204 Ala. 38, 85 So. 465 (1920).

■ Act No. 2079 authorizes cities having a population of 300,000 or more inhabitants according to any federal census to create parking authorities for the purpose of providing adequate public off-street parking in those cities. In the recitals of the Act, the Legislature has made very specific findings concerning the need for public parking facilities in the cities of the size to which the Act applies, and these findings are entitled to weight by this Court.

But even if the Legislature had made no statement of its findings and the purpose of the Act, we are aware that the revitalization of the downtown urban areas of cities over 300,000 population is tied substantially to the availability of convenient off-street parking.

■ The intervenors refer us to four Acts passed by the 1971 Legislature (Acts No. 2195, 437, 892 and 1568) which pertain to public parking in cities ranging in size from (not less than 37,000 nor more than 41,000), (not less than 40,000 nor more than 50,000), (not less than 135,000 nor more than 185,000), and (300,000 or more) respectively.

Appellants claim that each of the four Acts listed which were passed during the same legislative session contain the same general provisions for off-street parking in the cities to which they are applicable, and each is applicable to only one city in the State of Alabama. Appellants contend that a reading of the legislative finding contained in each of the Acts is strikingly similar, and "indeed is almost verbatim from one act to the other."

Appellants conclude their argument, saying:

"Applying the test set out in Reynolds v. Collier, supra, to Act 2079 in the light of the other acts of the 1971 Alabama Legislature relating to providing offstreet parking quickly leads to the con-clusion that the population classification contained in Act 2079 is not reasonably related to the purpose of the Act (providing offstreet parking), nor was it made in good faith. The population classification in the Act is clearly arbitrary, for if the Legislature had wanted to pass a general act of local application relating to offstreet parking, and had in good faith made a legislative determination that the act should have applicability only to towns of certain sizes, the Legislature would have passed a general act having a local application to cities having populations of 37,000 or more. Such an act would have provided for offstreet parking in all of the cities where offstreet parking was provided by the 1971 acts of the Legislature, and in addition would have provided for offstreet parking in the City of Gadsden having a population of 53,928, the City of Montgomery having a population of 133,386 and the City of Mobile having a population of 190,026. Such an act could be said to have a population classification which was included in good faith by the Legislature and was reasonably related to the subject matter of the Act. The inclusion of the cities of Gadsden, Montgomery and Mobile to the operation and effect of the Act would have been logical if the legislative finding that the purpose of the Act is to cure congestion in urban areas is to be given effect."

We cannot accept appellants' argument as applied to Act No. 2079. We here deal only with the constitutionality of the Act in question. The validity of these other Acts is not in issue here, and this opinion does not address these other laws.

The appellants' argument is similar to an argument of "impeachment by association" presented to and rejected by the Court in *State ex rel. Crenshaw v. Joseph*, 175 Ala. 579, 57 So. 942 (1911). In that case, an attack was made upon an Act of the Legislature providing for the creation of a commission form of government in cities having a population in excess of 100,000

(which the Court judicially knew applied only to the City of Birmingham). As the party attacking that Act pointed out, at the same session, the Legislature adopted four Acts on the subject of the commission form of government for municipalities, one applying to cities having a population between 25,000 and 50,000 (City of Montgomery), one applying to cities not otherwise covered by the classifications (City of Mobile), and finally one that was the subject of the litigation. On the basis of that legislative situation, the opponent of the Birmingham Act argued that, taking all of these Acts together, it was evident that each was intended to meet local conditions and did not respond to the needs of cities in the applicable class. With respect to this argument, the Court said in *State ex rel. Crenshaw v. Joseph,* supra:

"* * * The argument against [these acts] presents a novel application of the doctrine of construing statutes in pari materia. To link a number of separate acts together, each unobjectionable in itself, for the purpose of destroying all or any of them, would, so far as we are advised, be without precedent. We think rather that each of these acts is to be judged on its merits as they appear in the act itself. Classification by numbers having been recognized as legitimate, it must be a task of great difficulty to say just when the Legislature has overstepped the bounds of its power in arranging a classification on that basis. And while our knowledge, in an undefined and irresponsible way, of conditions and opinions operating upon the Legislature at the time of these acts may be such as to create suspicion that the effort was to provide differently for each of the three largest cities of the state on consideration of local demands, not based on essential differences of situation or the real interests of their inhabitants, we cannot look beyond the act itself for motives. 175 Ala. at 601, 57 So. at 949.

*Act No. 2079 contains a Double Classification.*

Appellants argue that Act No. 2079 contains a double classification, i. e., cities of (1) more than 300,000 population (2) *having an elected city council.* Appellants contend that the double classification occurs by virtue of the last paragraph of Section 8 of the Act, which provides:

"Any director of the Authority may be removed from office by the governing body in the same manner, and on the same grounds, as provided for in Section 451, Title 37, Code of Alabama of 1940, for removal of officers appointed by a city council."

■ The essence of their argument is that Section 8, by providing that the director may be removed from office "by the governing body" in the same manner and on the same grounds as provided for in Section 451, Title 37, Code of Alabama, 1940, for removal of officers appointed by a City Council, makes the Act applicable only to cities having a council form of government under Title 37. Double classification, if present, is fatal to the constitutionality of an act. This Court so held recently. *Jefferson County Board of Health v. City of Bessemer,* Ala., 301 So.2d 551 (1974). We do not find double classification here, however.

Section 8 confers upon the "governing body" the power of removal, and the term "governing body" is defined in Section 3 of the Act to mean "the body in which the general legislative powers of the city are vested." There is no suggestion here, nor in any other portion of the Act, that, in order to be subject to the provisions of the Act, a city need have a council form of government.

*The notice provisions deny taxpayers and citizens their right to due process of law.*

Appellants claim that Act 2079 is also unconstitutional as it includes in Section 22 provisions which effectively deny the tax-

payers and citizens their right to due process of law. Appellants say that the objectionable portion of Section 22 is as follows:

"Upon the adoption by the Board of any resolution providing for the issuance of bonds, the Authority may in its discretion cause to be published once a week for two consecutive weeks, in a newspaper that is customarily published in this State not less than five days in each calendar week and distributed in the county in which is located the principal office of the Authority, a notice in substantially the following form. * * * Any action or proceeding in any court to set aside or question the proceedings for the issuance of the bonds referred to in said notice or to contest the validity of any such bonds or the validity of the pledge and any instruments made to secure such bonds must be commenced within thirty days after the first publication of such notice. After the expiration of the said period no right of action or defense questioning or attacking the validity of the said proceedings, the said bonds or the said pledge or instruments shall be asserted, nor shall the validity of the said proceedings, bonds, pledge or instruments be open to question in any court on any ground whatsoever except in an action commenced within such period." Appellants' argument concludes:

"Interestingly enough, there is nothing in Section 22 that requires the notice to be published in a newspaper that is published in the county in which the bonds are to be issued. Publication in any newspaper that is distributed in Jefferson County would apparently satisfy the requirements of Section 22. It is difficult to understand how a notice published in the Montgomery Advertiser or the New York Times would give sufficient notice to the citizens and taxpayers of the City of Birmingham in order to satisfy the due process requirements of the Constitutions of the United States of America and the State of Alabama. *Robinson v. Hanrahan*, 409 U.S. 38, 34 L.Ed.2d 47, 93 S.Ct. 30, (1972)."

In short, appellants assert that Section 22 of Act No. 2079 renders that Act objectionable on due process grounds because of the provision requiring that actions challenging the validity of bond issues of the Authority be commenced within thirty days following the first publication of the notice of adoption of the bond resolution for two consecutive weeks "in a newspaper that is customarily published in this State not less than five days in each calendar week and distributed in the county in which is located the principal office of the Authority."

The trial court found Section 22 "does not, in its general effect or *as applied particularly to this cause,* deny any person . . . due process . . ." [Emphasis added.]

As applied to the facts of this case, the consideration of Section 22 is almost academic. The Authority, in presenting its case, did not prove or assert the publication of any notice as provided for in Section 22 and has not pleaded any such publication in bar to the participation of any party in this or any other litigation. Stated otherwise, the relief sought by the Authority is not premised upon, and is in no way dependent upon, the constitutionality vel non of the provisions of Section 22.

We do not deem it appropriate to discuss whether a taxpayer or citizen might have a valid constitutional argument under a different fact situation.

*The Act violates Section 45 of the Constitution.*

Appellants have listed nine provisions of Act 2079 which they contend are not contained in the title of the Act. They have picked out provisions which require the proceedings of the Authority to be recorded in a well-bound book, that each director may receive $25.00 for attendance

at each meeting, that the Authority may receive and accept grants, and other similar provisions. The necessary scope of the title of an Act, in order to meet the requirements of Section 45, is stated in *Opinion of the Justices,* 262 Ala. 345, 349, 81 So.2d 277, 281 (1955).

> "* * * It is sufficient to say that the title of an act need not be an index to it nor need it catalogue all powers intended to be bestowed. When the subject is expressed in the title in general terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in and authorized by it. Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694; Dearborn v. Johnson, 234 Ala. 84, 173 So. 864."

The Act this Court upheld in *Knight v. West Alabama Environmental Improvement Authority,* 287 Ala. 15, 246 So.2d 903 (1971) is similar to the Act here in question. The discussion in *Knight* is apt for disposition of appellants' assignment of error on this point.

### Bond Validation Statute Denies Due Process.

■ Appellants contend that the so-called bond validation statute does not comport with due process requirements. Appellants contend the provision for service of process upon the District Attorney and substituted service by publication on the remaining taxpayers and citizens of the organizing subdivision fails to provide adequate notice to them. We disagree. While substituted service may fail to provide for due process of law under certain situations [Cf. *Robinson v. Hanrahan,* 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972)], we do not believe that the failure of the Legislature to require personal service on every "taxpayer and citizen" makes the Act void in this bond validation proceeding. Appellants have cited no case

which holds that substituted service is inappropriate in a factual situation similar to the one here.

In *Castevens v. Stanly County,* 211 N.C. 642, 191 S.E. 739 (1937), a taxpayer brought an action to enjoin the issuance and sale of school and general fund bonds. Plaintiff contended that he would be deprived of due process by a decree validating the bonds because the validation statute did not require that his name appear in the summons or complaint, or that the summons be served on him personally. The Court said that in this instance all persons included within a well-defined class could be made parties defendant, and service of summons by publication was sufficient. Similarly, in *Lippitt v. City of Albany,* 131 Ga. 629, 63 S.E. 33 (1908), plaintiff argued that the validation statute violated due process because it deprived citizens of the right to question the validity of the bonds, although citizens were not made parties to the proceeding, and not served personally, or given reasonable opportunity to know of the pendency of the proceedings. The Court rejected this argument noting that the provisions of the statute for substituted service were not unconstitutional.

### The Bonds are not Revenue Bonds.

■ Appellants argue that while the bonds sought to be validated recite that they are revenue bonds, the evidence shows that they are not payable solely from revenues, but are payable partly from funds of the City of Birmingham. They claim, therefore, that the bonds were not revenue bonds and were issued without a vote of approval by the qualified voters of Birmingham, as required by Section 222 of Alabama's Constitution.

Section 222 deals with bonds issued by a city. The Authority which issued the bonds here was a public corporation which exists as a separate corporation. Furthermore, Amendment 108 of Alabama's Constitution seems to authorize the procedure

followed in this case. Amendment 108 provides:

"Each public corporation heretofore or hereafter organized or created in this state pursuant to authorization or determination by any municipality or municipalities, or county or counties, or the governing body of any one or more thereof, shall for the purposes of sections 222, 224, and 225 of this Constitution be deemed to be a separate entity from such municipality or municipalities, or county or counties. *Bonds and other securities heretofore or hereafter issued by any public corporation so organized shall not be deemed to constitute bonds or indebtedness within the meaning of said sections even though property, whether or not capable of producing income, may have been transferred to such public corporation by any one or more of such municipalities or counties either with or without the payment of pecuniary or other consideration.*" [Emphasis added.]

As we understand the agreement between the City and the Authority, the Authority has agreed to construct a facility and to operate it, and to pay the excess revenues to the City, and the City has agreed to make certain limited funds available to the Authority. No holder of any bond can sue the City for payment of his bond and none of the bonds could, under any interpretation, be deemed to be a general obligation of the City.

Appellants further claim that the provisions of a contract of purchase between the Exchange Company and the Birmingham Parking Authority constitute a lease of the proposed parking deck in violation of Section 11 of Act 2079. Section 11 provides, in part:

"The Board shall not enter into any lease of the parking facility unless the lease provides for the lessee to pay to the Authority an amount sufficient to meet the amortization requirements during the term of the lease and to pay the cost of keeping the parking facility in good repair and keeping it properly insured, unless the lease obligates the lessee, at lessee's expense, to keep the facility in good repair and properly insured."

Appellants say that under the terms of the agreement between Exchange Company and the Authority, the Authority has granted to the Exchange Company and the Exchange Security Bank the right to lease forty spaces in the northwest corner of the ground floor of the parking deck and has further granted to the Exchange Company and its affiliates and tenants in its proposed building the right to lease 125 parking spaces upon terms no less favorable than the terms spaces are rented to other parkers in the parking deck.

They claim the lease will not provide sufficient revenues in order to comply with Section 11 of Act No. 2079.

Under Section 11, Act No. 2079, the Authority could (1) operate the facility itself, (2) enter into a contract with some person to operate the facility, or (3) lease the facility. The Authority determined that it would operate the facility. We cannot hold that the trial court erred in holding that the contract to lease or rent spaces in the facility was valid.

Having considered all the assignments of error which are substantially argued in brief, we are of the opinion that the judgment of the trial court does not contain prejudicial error.

Since we affirm the judgment of the trial court, it is unnecessary for us to consider appellee's motion to dismiss the appeal.

Affirmed.

MERRILL, BLOODWORTH, ALMON, SHORES and EMBRY, JJ., concur.

HEFLIN, C. J., and FAULKNER, J., concur in the result.

JONES, J., not sitting.