Wayne Anthony AGEE, Petitioner-Appellant,

v.

J.D. WHITE, Warden and Attorney General of the State of Alabama, Respondents-Appellees.

No. 85–7749.

United States Court of Appeals, Eleventh Circuit.

Feb. 13, 1987.

Roger C. Appell, Birmingham, Ala., for petitioner-appellant.

Before KRAVITCH and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Wayne Anthony Agee, an Alabama inmate, appeals the denial of his petition for habeas corpus. At issue is whether two statements appellant gave to police were obtained in violation of appellant's rights under the fourth and fifth amendments and the due process clause of the fourteenth amendment. Appellant claims that both statements were tainted by his initial, illegal arrest. In addition, he contends that he gave the second statement, in which he confessed to committing rape, after an ineffective waiver of his *Miranda* rights.

The district court found that appellant's "taint" claim was precluded from federal habeas review by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), and that factual findings by the state courts compelled a determination that the second statement was voluntarily given. We affirm, but on grounds different than those relied upon by the district court.

## I. BACKGROUND

On January 16, 1981, Myra Faye Tucker and Terry Wayne Tucker were abducted at gunpoint as they were leaving a nightclub in Birmingham, Alabama. They were first taken to an apartment, where Mrs. Tucker was raped, and then to a secluded area, where both were shot to death.

On January 21, several policemen arrived at appellant's place of employment, approached appellant with their guns drawn, handcuffed him, and took him to the Birmingham police station, where he was kept in a locked room for several hours before being questioned. After being read his *Miranda* rights, appellant gave a non-incriminating statement concerning events on the night of the crime. Although admitting that on that evening he had been with two men suspected in the crime, appellant denied any involvement in the rape and murders. At the end of the statement a police officer told appellant that he might be needed as a witness, and appellant agreed to participate in further questioning.

Six days later, a police officer appeared at appellant's workplace and requested that appellant accompany him to police headquarters for further questioning. The same officer who had initially questioned appellant again conducted the interrogation. Appellant once more was read his *Miranda* rights; he indicated that he understood his rights and that he voluntarily waived them. The officer made no further comment about wanting appellant to serve as a witness, but neither did he inform appellant that following his prior statement the police had acquired additional information tending to implicate him in the crime. During this questioning session, appellant admitted raping Mrs. Tucker, and the police immediately placed him under arrest.

Appellant was convicted of capital murder and was sentenced to life in prison without parole. The conviction was upheld on appeal. *Agee v. State*, 465 So.2d 1196 (Ala.Cr.App.1984), *cert. denied*, No. 84–333 (Ala.1985). Two other men also were convicted of capital murder in connection with the crime and received the same sentence.

In his petition for federal habeas corpus, appellant raised four claims, all of which were denied by the district court without an evidentiary hearing. On appeal, Agee maintains only two claims, both of which challenge the constitutionality of his statements to the police. He contends first that the statements were "tainted" by the illegality of his initial arrest by police without probable cause. Second, he argues

that the second and incriminating confession was involuntary, and thus inadmissible, because he believed that an officer's remark at the first questioning session that Agee might be used as a witness contained an implicit promise of immunity against prosecution. We find both claims without merit.

## II. "TAINT" FROM THE ILLEGAL ARREST

The district court found appellant's fourth amendment challenge to the admission of the statements foreclosed by *Stone v. Powell, supra,* in which the Supreme Court held that federal habeas courts are precluded from addressing fourth amendment exclusionary claims that have had a full and fair opportunity for litigation in the state courts. *See also Cardwell v. Texas,* 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983) (per curiam) (holding *Stone v. Powell* preclusion applicable to confessions challenged on fourth amendment grounds).

■ We agree with the district court that, under the doctrine of *Stone v. Powell,* Agee's challenge to his first statement is foreclosed on habeas review. The trial court admitted the statement only after a full evidentiary hearing on appellant's motion to exclude. On direct appeal, the Alabama Court of Criminal Appeals assumed *arguendo* that the statement was improperly admitted, but concluded, in view of the incriminating admission in the second statement, that the introduction of the nonincriminating first statement was harmless. This harmlessness finding constituted a full and fair appellate litigation, foreclosing the claim from federal habeas review. *Cole v. Estelle,* 548 F.2d 1164 (5th Cir. 1977);[1] *see Stone v. Powell,* 428 U.S. at 470, 96 S.Ct. at 3040 (admission of evidence challenged by habeas petitioner had been found harmless by state court and thereby was precluded from federal habeas review).

■ Appellant's fourth amendment challenge to the second statement, in contrast, did not receive a similar hearing in the state appellate court. Although both at trial and on direct appeal appellant argued that the second statement was inadmissible because of the residual taint from the initial, illegal arrest, the Alabama Court of Criminal Appeals ignored this contention in its opinion. The claim, accordingly, is properly before this court, for the appellant did not receive a "full and fair consideration of his search-and-seizure claim at trial and *on direct review." Stone v. Powell,* 428 U.S. at 486, 96 S.Ct. at 3048 (emphasis added); *see O'Berry v. Wainwright,* 546 F.2d 1204, 1213 (5th Cir.1977) (" 'full and fair consideration' " includes "availability of meaningful appellate review" when facts are in dispute, and "full consideration" by an appellate court when the facts are not in dispute); *cf. Caver v. Alabama,* 577 F.2d 1188, 1191 (5th Cir.1978) (actual state court consideration not required for *Stone v. Powell* preclusion where habeas petitioner has missed "opportunity" to litigate by failing to raise claim at trial or on direct appeal).

■ To succeed on his fourth amendment claim, appellant must demonstrate not only that his initial arrest was illegal, but also that the connection between the initial police illegality and the second confession was not " 'so attenuated as to dissipate the taint' " of the arrest. *Wong Sun v. United States,* 371 U.S. 471, 491, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963) (quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939)).

■ We have little difficulty concluding that the initial seizure of appellant by the police was illegal. At a pretrial hearing, a police sergeant involved in the investigation testified that the officers did not have probable cause to arrest appellant when they first took him into custody for questioning. The only evidence linking appel-

---

**1.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

lant to the crime, the sergeant testified, was an anonymous telephone call advising the police that appellant was involved. The trial court nevertheless admitted appellant's statements into evidence, apparently under the rationale that appellant's initial encounter with police was not an "arrest" but rather an "invitation" to talk.[2] This conclusion, however, is unsupported by the record. Appellant gave unrefuted testimony that five or six officers confronted him at his workplace with guns drawn, handcuffed him, and then transported him to the police station, where he was placed in a locked room for three hours prior to questioning. Clearly, such an "invitation" was not one to be refused. Indeed, appellant not only was not "free to go," he in fact was "physically restrained" with handcuffs. *See Dunaway v. New York*, 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979). The seizure of appellant thus was "in important respects indistinguishable from a traditional arrest," and could be justified only upon a showing of probable cause. *Id.*

■ Because the police did not have probable cause to arrest appellant, the initial seizure was illegal, and any confession subsequently acquired by the police must be excluded "unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is 'sufficiently an act of free will to purge the primary taint.'" *Taylor v. Alabama*, 457 U.S. 687, 690, 102 S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1982) (quoting *Brown v. Illinois*, 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975)). The admissibility of the second statement thus depends upon whether the statement was acquired "by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. at 417. Several factors are relevant in making this determination, including "[t]he temporal proximity of the arrest and confession, the

presence of intervening circumstances, ... and, particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62 (footnotes and citations omitted). Also relevant, but not determinative, is whether *Miranda* warnings were administered prior to the confession. *Id.; Taylor v. Alabama, supra; see, e.g., United States v. Edmondson*, 791 F.2d 1512, 1516 (11th Cir.1986).

We note initially that here the arrest of appellant was particularly flagrant. As in *Brown v. Illinois*, officers forcibly seized a suspect without probable cause "in the hope that something might turn up." 422 U.S. at 592, 605, 95 S.Ct. at 2256, 2262. *See also Taylor v. Alabama*, 457 U.S. at 691, 102 S.Ct. at 2667. Moreover, in both cases, the manner of the arrest gave "the appearance of having been calculated to cause surprise, fright, and confusion." *Brown v. Illinois*, 422 U.S. at 605, 95 S.Ct. at 2262.

In distinct contrast to *Brown*, however, the statement at issue here arose from the flagrant police activity in only the most indirect manner. In *Brown*, the suspect gave one incriminating statement within two hours of the illegal arrest and a second, substantially similar statement several hours later. Despite the delay of several hours between the illegal arrest and the second statement, and despite the fact that on three occasions that evening officers had administered *Miranda* warnings to the suspect, the Supreme Court in *Brown* found that the second statement was as inadmissible as the first. 422 U.S. at 605, 95 S.Ct. at 2262. Because the initial, incriminating statement increased the pressures on the defendant to talk further, the Court reasoned, the second statement was "the result and fruit of the first." 422 U.S. at 605 & n.12, 95 S.Ct. at 2262 & n.12.

■ Here, by contrast, appellant's initial statement did not admit participation in

**2.** The record does not clearly indicate the grounds relied upon by the trial court in admitting the statements. At oral argument before this court, appellant's counsel, who also represented appellant at trial, stated that the trial court characterized the initial seizure of appellant as an "invitation." This assertion was not contradicted by counsel for the state.

criminal activity, and thus in no way increased the pressure for appellant to give the police additional, incriminating information. *Cf. Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 1294–95, 84 L.Ed.2d 222 (1985) (under some circumstances, second confessions may be admissible even where first, coerced confession "let the cat out of the bag" and thus increased psychological pressure on defendant to speak); *see also Martin v. Wainwright,* 770 F.2d 918, 928–29 (11th Cir.1985) (discussing "fruit-of-the-poisonous-tree" and "cat-out-of-the-bag" theories), *modified,* 781 F.2d 185 (11th Cir. 1986).

Moreover, here the intervention of time and circumstances further served to attenuate the illegal arrest from appellant's second statement. After giving the initial, non-incriminating statement, appellant was released immediately, with no charges filed. For a full six days he was able to engage in the routines of home and work. In our view, this lengthy return to normal surroundings greatly dissipated any coercive impact remaining from the illegal arrest. *See Wong Sun,* 371 U.S. at 491, 83 S.Ct. at 419 (confession admissible where suspect "had been released on his own cognizance after a lawful arraignment, and returned voluntarily several days later to make the statement"); *Edmondson,* 791 F.2d at 1515–16 (forty-five minute lapse sufficient, with other factors, to support attenuation finding); *cf. Taylor v. Alabama,* 457 U.S. at 691, 102 S.Ct. at 2667 (six-hour lapse insufficient where suspect remained "in police custody, unrepresented by counsel, ... questioned on several occasions, fingerprinted, and subjected to a line-up").

Finally, and most significantly, the police here did not exploit the initial, illegal arrest to obtain the second confession. After the first interrogation, the physical treatment of appellant by the police was exemplary. When the police wanted to ask appellant additional questions six days after his initial release, a single officer escorted him back to headquarters. Before the second interrogation began, the officer once more informed appellant of his *Miranda* rights,

thereby further attenuating the taint from the illegal arrest. *See Brown,* 422 U.S. at 603, 95 S.Ct. at 2261 (administration of *Miranda* warnings one factor in determining attenuation of taint); *Edmondson,* 791 F.2d at 1516 (same).

In contending that the second interrogation should have contained a warning that he was at that time a suspect in the crime, appellant does not attempt to establish a causal connection between the illegal arrest and the second statement. Nor, in our opinion, could he do so. The record does not suggest that the officer acted in bad faith in suggesting after the first statement that appellant might be used as a witness, and appellant does not claim otherwise. The claim concerning the failure to inform appellant of his status as a suspect thus is related to the illegal arrest only in the most tangential sense: appellant's accusation would be no different had the police acted in a perfectly proper manner in obtaining appellant for the initial questioning. Consequently, in view of the time and circumstances intervening between the illegal arrest and the second statement, as well as the absence of any direct causal relationship between the two, we conclude that the second statement was sufficiently purged of any taint from the illegal arrest that it cannot be excluded on fourth amendment grounds.

## III. VOLUNTARINESS

Appellant further claims that the second statement should be excluded because his waiver of *Miranda* rights was ineffective. He argues that he gave the second, incriminating statement only because he previously had been asked by the police to serve as a witness, and thus believed that he was immune from prosecution. We conclude, however, that this contention is untenable given that the *Miranda* warnings administered to appellant fully informed him that any statement could and would be used against him.

Under the rule of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

(1966), police officers are required, *inter alia*, to inform individuals about to undergo custodial interrogation that the state intends to use their statements to convict them, that they have the right to remain silent, and that they have the right to have counsel present during questioning. *Id.* at 468–70, 86 S.Ct. at 1624–26. An individual may effectively waive these rights "provided the waiver is made voluntarily, knowingly, and intelligently." *Id.* at 444, 475, 86 S.Ct. at 1612, 1628. Thus, for a confession to be constitutionally admissible against a defendant, the waiver of *Miranda* rights must have been voluntary in the sense that it was not " 'extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' " *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964) (quoting *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897)). Additionally, the waiver "must have been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, —— U.S. ——, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986); *see also Colorado v. Connelly*, —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (confession "voluntary" where individual "understood" *Miranda* right but was unable to remain silent due to internal psychological compulsion not causally related to police coercion). In determining the validity of a waiver, a reviewing court must consider " 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.' " *E.g., Edwards v. Arizona*, 451 U.S. 477, 482–83, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

Appellant bases his argument that his waiver of *Miranda* rights was not "voluntary" upon an officer's alleged statements after the first interrogation session that appellant might be needed to serve as a witness and that appellant had "nothing to worry about." Implicit in these comments, appellant claims, was a promise that he would not be prosecuted in return for his services as a witness against his codefendants. Furthermore, he argues, this belief that he would not be prosecuted was reinforced by newspaper articles that quoted officers as referring to him as a "key witness."

Finally, appellant claims that because the police both inculcated and cultivated his perception of his status as a witness, they were required expressly to inform him prior to the beginning of the second interrogation that he was no longer a mere "witness," but rather was suspected of participating in the crime. Absent such an explicit warning, he contends, the *Miranda* warnings administered to him prior to the second interrogation session were simply a formality devoid of meaning.

In denying this claim, the district court felt itself bound by 28 U.S.C. § 2254(d) and *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), to accord presumptive correctness to the determination made on direct appeal by Alabama Court of Criminal Appeals that the statements made by police officers did not contain any implied promises of immunity from prosecution. Relying primarily upon this appellate court determination, the district court concluded that appellant gave the statement voluntarily.

Appellant contends, however, that the district court erred by granting the state appellate court determinations an overly broad presumption of correctness. We agree. Subsequent to the issuance of the district court's order, the Supreme Court reaffirmed in *Miller v. Fenton*, —— U.S. ——, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), that federal courts on habeas review must make an independent legal determination of whether a confession was "voluntary" in the sense that it "was obtained in a manner compatible with the requirements of the Constitution." 106 S.Ct. at 451. Although noting that under 28 U.S.C. § 2254(d) federal habeas courts must accord a presumption of correctness to state court findings concerning "subsidiary factual questions," *id.*

at 451, 453, the Court expressed a somewhat limited view of the issues that constitute such "factual questions." Indeed, all the examples of such "facts" listed by Court concern historical facts in the strictest sense: the properties of a drug, the credibility of a witness, *id.* at 451, the "length and circumstances of the interrogation," and the experience of the defendant, *id.* at 453. By contrast, the Court's discussion of the ultimate "voluntariness" finding suggests a considerably broader independent role for the federal courts:

> [T]he admissibility of a confession turns as much on whether the techniques for extracting statements, as applied to *this* suspect, are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means as on whether the defendant's will was in fact overborne.

*Id.* (emphasis in original).

■ In view of the Supreme Court's discussion of the role of the federal courts in determining on habeas review the admissibility of a confession, we conclude that the district court improperly accorded a presumption of correctness to the state appellate court's determination that the statements made by the police to appellant did not imply a promise of immunity. Nevertheless, after conducting our own independent legal analysis of the statements, we agree with the state appellate court that

the statements did not contain an implied promise of immunity. Furthermore, we conclude that the confession was not rendered involuntary by appellant's alleged subjective belief that he was immune from prosecution.

■ Even if, as appellant asserts, the interrogating officer stated at the end of the first interrogation both that appellant might be needed as a prosecution witness and that appellant had "nothing to worry about," such statements cannot be construed as an implied promise of immunity from prosecution.[3] To the contrary, because the comments immediately followed appellant's repeated denial of any wrongdoing, the more likely implication was that appellant would not face prosecution so long as his account of the event proved true. At most, the officer's statements were ambiguous, noncommittal remarks prompted by the officer's own impression of appellant's statement. Any implication of immunity, consequently, only could have arisen from appellant's own subjective understanding of the statements.

■ Because the officer's comments did not contain an implied promise of immunity, we reject appellant's contention that the police were obligated expressly to inform him prior to the second interrogation session that the police then suspected him of participating in the crime. *Miranda* does not require that the police constantly sup-

---

**3.** In contrast to a state court determination concerning whether a particular statement amounts to a promise of immunity, a determination as to whether a particular statement in fact was made is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d). Here, however, the state trial court made no finding, either explicit or implicit, as to whether the officer in fact said that appellant had "nothing to worry about." *Cf. LaVallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973) (per curiam) (factual finding implicit where trial court voluntariness determination wholly dependent upon resolution of factual controversy). Nor, contrary to the state's assertions before this court, do we read the state appellate court's statement of the facts of the case to contain a "finding" that the statement was not made. Rather, the state court's opinion simply ignored appellant's allegation. *See* 465 So.2d at 1199.

Moreover, even had the state appellate court explicitly made such a finding, we question whether it would be entitled to a presumption of correctness, since it essentially would be a credibility determination based upon nothing more than a "paper" record of conflicting testimony. *See* 28 U.S.C. § 2254(d)(2) (no presumption where "factfinding procedure employed by the state was not adequate to afford a full and fair hearing"); *cf. Sumner v. Mata, supra,* (presumption accorded to appellate court finding, based upon trial transcript, that pretrial photograph identification was not impermissibly suggestive). Because we conclude that no promise of immunity was implied even if the officer made the statements alleged by appellant, we need not decide either whether the state appellate court made a factual determination or whether the finding would be entitled to a presumption of correctness.

ply detainees with all information that might be relevant in deciding whether to waive their constitutional rights. *Colorado v. Spring,* —— U.S. ——, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987); *see Moran v. Burbine,* 106 S.Ct. at 1142; *cf. Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (confession not involuntary even though police falsely told detainee that co-defendant had confessed). Indeed, adoption of appellant's argument would severely undermine the "ease and clarity of . . . application" that is " '[o]ne of the principal advantages' " of the *Miranda* rule. *Moran v. Burbine,* 106 S.Ct. at 1143 (quoting *Berkemer v. McCarty,* 468 U.S. 420, 430, 104 S.Ct. 3138, 3145, 82 L.Ed.2d 317 (1984)). Under the theory appellant asserts, police officers would be obligated to discern detainees' subjective misunderstandings of their *Miranda* rights and then to dispel those misunderstandings with additional information. Such an approach surely "would have the inevitable consequence of muddying *Miranda*'s otherwise relatively clear waters." *Id.*

Furthermore, at least where, as here, the police did not take affirmative steps to mislead a detainee as to the possible consequences of making a confession, *Miranda* does not require that a confession be excluded as involuntary solely because of the detainee's subjective misunderstandings of those consequences. *Colorado v. Spring, supra; see Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285 1297, 84 L.Ed.2d 222 (1985). Appellant, however, urges us to inquire into his "state of mind" at the time he confessed and to determine, based on factors "quite divorced from any coercion brought to bear on [him] by the State," *Colorado v. Connelly,* 107 S.Ct. at 522, that he confessed because of a misunderstanding of his legal status. This the Constitution does not demand. *Id.*

Appellant does not dispute that he received full *Miranda* warnings, and that these warnings accurately informed him that the state intended to use his statements against him. Nor does appellant contend that, based upon his background,

experience, conduct, we should find him incapable of understanding the clear import of those warnings. Consequently, we conclude that appellant voluntarily waived his *Miranda* rights, and that his subsequent confession properly was admitted into evidence. The judgment of the district court denying habeas relief, accordingly, is AFFIRMED.